### COOK & BERNHEIMER CO. v. ROSS et al.

(Circuit Court, S. D. New York. March 31, 1896.)

UNFAIR COMPETITION—IMITATION OF SHAPE OF BOTTLES.

    Plaintiff, under a contract with the distiller of a popular brand of whiskey, bottled such whiskey at the distillery, and sold it under labels stating that it was so bottled, and bearing the distiller's guaranty of purity, which obtained favor in the market for plaintiff's bottling. The bottles used by plaintiff were of a peculiar shape, originally devised by plaintiff; and, by means of extensive advertising, such bottles came to be generally relied upon by purchasers as a means of identifying the whiskey bottled by plaintiff, which attained a large sale. Some time after the adoption by plaintiff of such peculiar bottles, defendants, who had been dealing for some years in the same whiskey, bottled by themselves, began to use a bottle of precisely similar shape and appearance to that used by plaintiff, though bearing labels which were in no sense imitations of plaintiff's labels. *Held*, that the use of such bottles by defendants constituted unfair competition with plaintiff, and should be restrained.

Motion for Injunction Pendente Lite.

Livingston Gifford, for the motion.
John A. Straley, opposed.

LACOMBE, Circuit Judge. The Hannis Distilling Company has for many years manufactured a rye whiskey, which it sells at wholesale in barrels under the name of "Mount Vernon Pure Rye Whiskey." The brand has long been well known and popular. Dealers in whiskey have been accustomed to buy this variety in barrels, and, after bottling it themselves, offer it to the trade in the smaller package under the name of "Mount Vernon." The purchaser's assurance that the whiskey in the bottles is pure Mount Vernon, unaltered by rectification or otherwise, of course depends upon the reputation and character of the individual bottler. Complainant is the successor of the firm of Cook & Bernheimer. That firm, in 1889, entered into a contract with the Hannis Distilling Company whereby said firm and its successors became possessed of the exclusive right of bottling Mount Vernon whiskey at the distillery of the company. The importance of this concession lies in the fact that under the provisions of sections 3280, 3244, 3456, Rev. St. U. S., no one

is allowed to carry on the business of distilling on any premises less than 600 feet in a direct line from any premises used for rectifying, nor to rectify distilled spirits on any premises less than 600 feet from a distillery. A heavy fine is imposed for any violation of these provisions. It is evident, therefore, that, when whiskey is bottled at a distillery, the purchaser has a further assurance than the mere reputation of the individual bottler that there has been no adulteration or modification of the original article during the process of so-called "rectification." It is evident, therefore, that the exclusive right of bottling a popular brand of whiskey at the distillery is valuable to its possessor. Moreover, being itself assured that the bottling would be honest, the Hannis Distilling Company further agreed that Cook & Bernheimer might put on their labels the words, "Purity Guaranteed by the Hannis Distilling Company." Immediately after securing this concession, Cook & Bernheimer began, and their successor, the complainant, has continued, to bottle Mount Vernon whiskey, and offer it to the public. Complainant's name does not appear on the labels used, the name of the bottler being considered immaterial, since the honesty of the bottling no longer depends solely on his good faith, but upon the circumstance that it is bottled at the distillery. Complainant's name and the distilling company's monogram appear on the capsule. On the front of each bottle is the following label:

MOUNT VERNON PURE RYE WHISKEY,
Bottled at the Distillery and Purity Guaranteed by the
HANNIS DISTILLING CO.
Bottled for Export.                    Copyright 1890, by Hannis Distilling Co.

On the rear of the bottle appears the following label:

I certify that to this bottle, after being filled, corked, and capped in the warehouse of the Mount Vernon Distillery, Baltimore, Md., was attached this numbered label.                                                  H. W. WHITE.
Series A, No. 635,195, Sup't. Mt. Vernon Dist.
The capsule of this bottle is wired and sealed and cork-branded. The absence of this protection is evidence that the contents are not as bottled at the distillery. The label is registered, and the design of the bottle patented.

The defendants' front label reads:

MOUNT VERNON PURE RYE WHISKEY.
Bottled and Guaranteed
by
ROSS & KEANY,
New York.

The defendants' rear label reads:

CAUTION: We guarantee this whiskey distilled by THE HANNIS DISTILLING CO. Baltimore, Md. matured by age and bottled under our own supervision.                                           ROSS & KEANY.

Complainant, of course, has no exclusive right to the name "Mount Vernon," and the labels of defendants are in no sense an imitation of the labels of the complainant. Complainant's case rests solely on the form of package, which it claims has been so imitated as to make out a case of unfair competition.

Undoubtedly, a large part of the consumption of whiskey is in public drinking places, where it is dispensed to the consumer from the opened bottle. It is always desirable, therefore, for a dealer who wishes to push the sale of his own goods on their own merits to devise, if he can, some earmark more permanent than a pasted label to distinguish them. Complainant's predecessors accordingly, in March, 1890, adopted a brown glass bottle of a peculiar square shape, unlike any that had theretofore been used for bottling whiskey, or, indeed, so far as the evidence shows, for any other purpose. It is a form of package well calculated by its novelty to catch the eye, and be retained in the remembrance of any one who has once seen it. In order to develop and extend the business they expected to control under their agreement with the Hannis Distilling Company, complainant and its predecessors have expended more than $50,000 in advertising its said bottling. In all these advertisements the peculiar square-shaped bottle is the chief and most prominent feature. It is not surprising, therefore, to find it stated in the moving affidavits that the shape and general appearance of the bottle has come to be principally, if not exclusively, relied on by ordinary purchasers as the means of identifying this bottling of Mount Vernon whiskey from all other bottlings, the purity of which is not guarantied by the distillers, but only by the bottler. Complainant's bottling seems to have acquired a high reputation, large and increasing quantities of it being yearly sold, at a price in excess of that obtained by other bottlers of Mount Vernon whiskey.

About December, 1895, defendants, who had been dealing in Mount Vernon whiskey for many years, began first to put it up in bottles, which are Chinese copies of the peculiar square-shaped, bulging-necked bottles of the complainant. Of course, they aver that this was without any intention "to deceive the public," "or to palm off defendants' goods for complainant's." They account for the sudden appearance of their output of Mount Vernon whiskey in this form as follows. "There was a demand for Mount Vernon whiskey along in November last, and defendants sought a convenient and useful package in which to place their product upon the market, and purchased a stock of bottles of the square form for that purpose, without making a special design therefor, and in the open market;" and allege that "such bottles can be purchased of reputable bottle manufacturers from molds used for some time last past." This last averment may well be true. The industry of defendants' counsel has marshaled here an array of square-shaped bottles filled with whiskey, which shows that for some time imitations of complainant's bottle have been on the market. But there is not a word of proof to trace back any one of these bottles to a period anterior to the adoption of the square shape by complainant's predecessor as a distinctive form of package. Despite defendants' denials,—and they only deny intent to deceive the public, not intent to use a form of package just like complainant's,—the court cannot escape the conviction that they found the square-shaped bottle "convenient and useful." because it was calculated to increase the sale of their goods; and that such increase, if increase there be, is due to the circum-

stance that the purchasers from defendants have a reasonable expectation that the ultimate consumer, deceived by the shape, will mistake the bottle for one of complainant's. This is unfair competition within the authorities, and should be restrained.

It is contended that complainant is not entitled to an injunction because its own representations are untruthful. This contention is not established by the proof. The label does not assert that the whiskey is "bottled by the Hannis Distilling Company," but only that it is "bottled at the distillery." Nor is there anything in the suggestion that the bottling is not done within the very four walls in which the whiskey is distilled. It is done on premises of the Hannis Distilling Company, known generally as its "Distillery," and within the 600 feet prescribed by the statute from the room in which the stills are located.

The fact that complainant also puts up in bottles of the same shape another brand of whiskey, known as "Hannisville," made by the same distilling company in another of its distilleries, and bottled by complainant under a similar contract to the one above referred to, is wholly immaterial.

Injunction pendente lite is granted against the further use of the square-shaped, bulging-necked bottle as a package for Mount Vernon whiskey.