ONEIDA COMMUNITY, Limited, v. ONEIDA GAME TRAP CO., Inc.
(No. 169–85.)

(Supreme Court, Appellate Division, Third Department.   July 1, 1915.)

1. TRADE-MARKS AND TRADE-NAMES ☞41—REGULATION AND REGISTRATION—CONSTITUTIONAL PROVISIONS.

Trade-marks do not come within that clause of the federal Constitution providing that Congress shall have power to promote the progress of science and useful arts by securing for a limited time to authors and inventors the exclusive use to their respective writings and discoveries, but, in so far as it is attempted, finds its authority in the commerce clause of the Constitution.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 46; Dec. Dig. ☞41.]

2. TRADE-MARKS AND TRADE-NAMES ☞9—REGISTRATION—GEOGRAPHICAL NAMES.

Trade-Mark Act Feb. 20, 1905, c. 592, 33 Stat. 724, providing that the owner of a trade-mark used in commerce with foreign nations, or among the several states, or with the Indian tribes, may cause it to be registered, and that nothing should prevent the registration of any mark used by the applicant or his predecessors which was in actual and exclusive use as a trade-mark for 10 years next preceding February 20, 1905, extended the common law to cover a trade-mark which by actual use had acquired a secondary meaning for an individual name or geographical location in connection with a given line of goods, so that the word "Oneida," while in the geographical sense not subject to appropriation for a trade-mark as part of the registered trade-name "Oneida Community" was entitled to protection.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 13; Dec. Dig. ☞9.]

3. COURTS ☞489—CONCURRENT JURISDICTION—TRADE-MARKS.

Trade-Mark Act Feb. 20, 1905, providing that the owner of a certain kind of trade-mark may have it registered, and that nothing shall prevent the registration of any mark, used by the applicant or his predecessors for 10 years preceding February 20, 1905, and that the circuit and territorial courts of the United States shall have original jurisdiction, and the Circuit Courts of Appeal shall have appellate jurisdiction, of all suits at law or in equity respecting trade-marks registered in accordance with the act, does not exclude the jurisdiction of the state courts, and the owner of a registered trade-mark is entitled to protect it from infringement and unfair competition by a suit therein.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 404, 1324–1330, 1333–1341, 1372–1374; Dec. Dig. ☞489.]

4. TRADE-MARKS AND TRADE-NAMES ☞97—INFRINGEMENT AND UNFAIR COMPETITION—RELIEF.

The Oneida Community, which .manufactured and sold about 92 per cent. of all the game traps used in the world and about 80 per cent. of

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

those used in the United States, and which advertised them as "Oneida Community Game Traps," under Trade-Mark Act Feb. 20, 1905, registered the word "Oneida" as a part of its trade-mark "Oneida Community" and usually stamped upon the pans the words "Victor Oneida Community, N. Y.," or the word "Oneida," with variations. Defendant, under the name "Oneida Game Trap Company," located at Oneida, N. Y., manufactured game traps in competition with plaintiff's traps, and stamped upon the pans the words "Game Traps, Triumph No. 1, Manufactured at Oneida, N. Y." *Held*, that the use of the corporate name "Oneida Game Trap Company" was a colorable imitation of plaintiff's trade-mark, and that, regardless of wrongful intent or facts justifying an inference thereof, the plaintiff was entitled to enjoin defendant from using its corporate name and from stamping the word "Oneida" upon its traps.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. ⊕═97.]

Appeal from Trial Term, Madison County.

Action by the Oneida Community, Limited, against the Oneida Game Trap Company, Incorporated. From the judgment (150 N. Y. Supp. 918), both parties appeal. Modified and affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Harry D. Nims, of New York City, and C. R. Coville, of Oneida, for plaintiff.

T. A. Devereux, of Oneida, for defendant.

WOODWARD, J. The plaintiff, the Oneida Community, Limited, and its predecessors, has manufactured game traps for a period of 60 years, and it appears from the evidence that it now produces and sells about 92 per cent. of all the game traps used in the world, and about 80 per cent. of the traps used in the United States. It has factories located at a settlement known as Sherrill, now within the corporate limits of the city of Oneida, and at Niagara Falls, Ontario, and having a commanding position in the industry of manufacturing game traps, it must be obvious that it has a good will which would be of great value, and which would naturally be desired by a competitor attempting to establish a like business. The evidence in the case clearly establishes the existence of this good will; it shows conclusively that the Oneida Community, Limited, game traps have an established reputation; that they are well known to the trade and to the users of traps; and that all competitors have found it difficult to replace the plaintiff in the estimate of those engaged in trapping, either professionally or as an incident to the life of farmer boys. Having this established business, with its immensely valuable good will, which facts are important to be kept in mind in dealing with the evidence in this case, the plaintiff has brought this action to restrain the defendant from an infringement of its registered trade-mark, as well as from an unfair competition, and for damages. It has succeeded in part, in that the court has given judgment in its favor; but this the plaintiff deems inadequate, and has appealed from the judgment, while the defendant appeals from so much of it as awards any relief whatever to the plaintiff.

[1-3] It is conceded on the part of the defendant that the plaintiff had heretofore registered the word "Oneida" as a part of its trademark "Oneida Community," under the 10-year clause of the act of Congress of February 20, 1905, and that this trade-mark was used by the plaintiff in interstate and foreign commerce and in trade with the Indian tribes; but it is urged that the court was without jurisdiction to construe or enforce this federal statute, and, as this must have a very important bearing upon the proper disposition of this litigation, it is important that this jurisdictional question be disposed of now. The argument of the defendant is that the question of the effect of the 10-year clause upon the plaintiff's rights was not a common-law question; that it depended entirely upon the federal statute, and gave an entirely new cause of action in addition to all causes of action of which the state courts then had jurisdiction; that this new and additional cause of action being created by, and entirely dependent upon, a federal statute, must be construed and enforced by the federal courts, unless some new and additional authority was directly given to the state courts, and this has not been done. Dudley v. Mayhew, 3 N. Y. 9, Continental Stove Co. v. Clark, 100 N. Y. 370, 3 N. E. 335, and various other cases, are cited as authority for this proposition; but we are of the opinion that the principles enunciated in those cases do not support the defendant's contention.

The case of Dudley v. Mayhew, supra, involved a patent right, and it was held that the courts of this state have no jurisdiction to entertain a suit instituted to restrain the infringement of a patent right, which is undoubtedly the law. Robb v. Connolly, 111 U. S. 624, 636, 4 Sup. Ct. 544, 28 L. Ed. 542. But the court in this same case pointed out that, while it was true that where a statute confers a right and prescribes adequate means of protecting it, the proprietor of the right is confined to the statutory remedy. Where the statute creating the right omits to provide against its infringement the remedy may be pursued at large by any appropriate action or proceeding. This is the principle involved in the case now under consideration, and, as the statute has not provided an exclusive remedy, we are of the opinion that it cannot be held that the court was without jurisdiction simply because the statute gives jurisdiction to the federal courts. Trade-marks do not come within that clause of the federal Constitution which provides that Congress shall have power to "promote the progress of science and useful arts, by securing, for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries," but in so far as it is attempted, finds its authority under the provision that Congress shall have power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes."

The reasons which might exclude patent rights from the jurisdiction of state courts have no application to a case such as is here presented under the power of the federal government to deal with interstate commerce. The statute here under consideration provides that "the owner of a trade-mark used in commerce with foreign nations, or among the several states, or with Indian tribes," may cause the same to be registered; and, recognizing the general principle that

geographical names cannot be made the subject of trade-marks, it is provided:

"That nothing herein shall prevent the registration of any mark used by the applicant or his predecessors, or by those from whom title to the mark is derived, in commerce with foreign nations or among the several states or with Indian tribes, which was in actual and exclusive use as a trade-mark of the applicant, or his predecessors from whom he derived title, for ten years next preceding February twentieth, nineteen hundred and five."

And it was held in Thaddeus Davids Co. v. Davids, 233 U. S. 461, 34 Sup. Ct. 648, 58 L. Ed. 1046, that this clause was intended to extend the principles of the common law to cover a trade-mark which had been in actual use and had thus acquired a secondary meaning for an individual name or geographical location in connection with a given line of goods. The plaintiff in this action has such a registered trade-mark, the words "Oneida Community" being thus protected, and unless the contention of the defendant is right, that this right can be enforced only in the federal courts, the plaintiff is entitled to be protected in its rights in the present action.

"Underlying the entire argument in behalf of the plaintiff in error," say the court in Robb v. Connolly, 111 U. S. 624, 635, 4 Sup. Ct. 544, 550 (28 L. Ed. 542), "is the idea that the judicial tribunals of the states are excluded altogether from the consideration and determination of questions involving an authority, or a right, privilege, or immunity, derived from the Constitution and laws of the United States. But this view is not sustained by the statutes defining and regulating the jurisdiction of the courts of the United States. In establishing those courts Congress has taken care not to exclude the jurisdiction of the state courts from every case to which, by the Constitution, the judicial power of the United States extends. In the Judiciary Act of 1789 [Act Sept. 24, 1789, c. 20, 1 Stat. 73] it is declared that the Circuit Courts of the United States shall have original cognizance, 'concurrent with the courts of the several states,' of all suits of a civil nature, at common law or in equity, involving a certain amount, in which the United States are plaintiffs or petitioners, or an alien is a party, or the suit is between a citizen of the state where the suit is brought and a citizen of another state. By section 711 of the Revised Statutes of the United States, as amended by the act of February 18, 1875 [18 Stat. 318, c. 80], jurisdiction, exclusive of the courts of the several states, is vested in the courts of the United States of all crimes and offenses cognizable under the authority of the United States, of all suits for penalties and forfeitures incurred under their laws, of all civil causes of admiralty and maritime jurisdiction, of seizures under the laws of the United States, on land or on waters not within the admiralty and maritime jurisdiction, of all cases arising under the patent right or copyright laws of the United States, of all matters and proceedings in bankruptcy, and of all controversies of a civil nature, where a state is a party, except between a state and its citizens, or between a state and citizen of other states, or aliens; the jurisdiction of the states remaining unaffected in all other cases to which the judicial power of the United States may be extended. And by the act of March 3, 1875 [18 Stat. 470, c. 137] the original jurisdiction of the Circuit Courts of the United States is enlarged so as to embrace all suits of a civil nature, at common law or equity, involving a certain amount, arising under the Constitution and laws of the United States, or treaties made, or which shall be made, under their authority, or in which the United States are plaintiffs or petitioners, or in which there shall be a controversy between citizens of different states, or a controversy between citizens of the same state claiming lands under grants of different states, or a controversy between citizens of a state and foreign states, citizens, or subjects. But it is expressly declared that in such cases their jurisdiction is 'concurrent with the courts of the several states'—the jurisdiction of the latter courts being, of

course, subject to the right to remove the suit into the proper court of the United States, at the time and in the mode prescribed, and to the appellate power of this court, as established and regulated by the Constitution and laws of the United States. So that a state court of original jurisdiction, having the parties before it, may, consistently with existing federal legislation, determine cases at law or in equity, arising under the Constitution or laws of the United States, or involving rights dependent upon such Constitution or laws. Upon the state courts, equally with the courts of the Union, rests the obligation to guard, enforce, and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them; for the judges of the state courts are required to take an oath to support that Constitution, and they are bound by it, and the laws of the United States made in pursuance thereof, and all treaties made under their authority, as the supreme law of the land, 'anything in the Constitution or laws of any state to the contrary notwithstanding.' "

This, in the absence of some provision of the statute specially excluding the state courts from jurisdiction, would seem to be a conclusive answer to the contention of the defendant. The statute, it is true, provides that:

"The circuit and territorial courts of the United States and the Supreme Court of the District of Columbia shall have original jurisdiction, and the Circuit Courts of Appeal of the United States and the Court of Appeals of the District of Columbia shall have appellate jurisdiction of all suits at law or in equity respecting trade-marks registered in accordance with the provisions of this act, arising under the present act, without regard to the amount in controversy."

But this does not exclude the state courts, who are as much governed by an act of Congress in administering the law as though the statute were enacted by the state Legislature. The courts mentioned are inferior courts, depending upon the statute for their very existence, and it is necessary to the jurisdiction of such courts that it should be provided by statute. Such a provision does not, however, exclude the courts of original jurisdiction in the several states from enforcing federal statutes, and, because there seems to be a widespread impression among members of the bar that our state courts have a right at least to decline jurisdiction, it may be worth while to quote the court in the Second Employers' Liability Cases, 223 U. S. 1, 55, 32 Sup. Ct. 169, 177 (56 L. Ed. 327, 38 L. R. A. [N. S.] 44), where, after pointing out the paramount authority of the United States in legislating under the commerce clause (the clause involved here), the court say:

"We come next to consider whether rights arising under the congressional act may be enforced, as of right, in the courts of the states when their jurisdiction, as prescribed by local laws, is adequate to the occasion. The first of the cases now before us was begun in one of the superior courts of the state of Connecticut, and in that case the Supreme Court of Errors of the state answered the question in the negative. That, however, was not because the ordinary jurisdiction of the superior courts, as defined by the Constitution and laws of the state, was deemed inadequate or not adapted to the adjudication of such a case, but because the Supreme Court of Errors was of opinion (1) that the congressional act impliedly restricts the enforcement of the rights which it creates to the federal courts, and (2) that, if this be not so, the superior courts are at liberty to decline cognizance of actions to enforce rights arising under that act, because (a) the policy manifested by it is not in accord with the policy of the state respecting the liability of employers to employés for injuries received by the latter while in the service

of the former, and (b) it would be inconvenient and confusing for the same court, in dealing with cases of the same general class, to apply to some the standards of right established by the congressional act and in others the different standards recognized by the laws of the state. We are quite unable to assent to the view that the enforcement of the rights which the congressional act creates was originally intended to be restricted to the federal courts. The act contains nothing which is suggestive of such a restriction, and in this situation the intention of Congress was reflected by the provision in the general jurisdictional act 'that the Circuit Courts of the United States shall have original cognizance, *concurrent with the courts of the several states,* of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, *and arising under the Constitution or laws of the United States.*' Act Aug. 15, 1888, 25 Stat. 433, c, 866, § 1; Robb v. Connolly, 111 U. S. 624, 637 [4 Sup. Ct. 544, 28 L. Ed. 542]; United States v. Barnes, 222 U. S. 513 [32 Sup. Ct. 117, 56 L. Ed. 291]. This is emphasized by the amendment engrafted upon the original act in 1910, to the effect that 'the jurisdiction of the courts of the United States under this act shall be *concurrent with that of the courts of the several states,* and no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States.' The amendment, as appears by its language, instead of granting jurisdiction to the state courts, presupposes that they already possessed it. * * * The suggestion that the act of Congress is not in harmony with the policy of the state, and therefore that the courts of the state are free to decline jurisdiction, is quite inadmissible, because it presupposes what in legal contemplation does not exist. When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the states, and thereby established a policy for all. That policy is as much the policy of Connecticut as if the act had emanated from its own Legislature, and should be respected accordingly in the courts of the state. As was said by this court in Claflin v. Houseman, 93 U. S. 130, 136, 137 [23 L. Ed. 833]: 'The laws of the United States are laws in the several states, and just as much binding on the citizens and courts thereof as the state laws are. The United States is not a foreign sovereignty as regards the several states, but is a concurrent, and, within its jurisdiction paramount, sovereignty. * * * If an act of Congress gives a penalty (meaning civil and remedial) to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a state court. The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief, because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the state as it is to recognize the state laws. The two together form one system of jurisprudence, which constitutes the law of the land for the state; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent. * * * It is true the sovereignties are distinct, and neither can interfere with the proper jurisdiction of the other, as was so clearly shown by Chief Justice Taney, in the case of Ableman v. Booth, 21 How. 506 [16 L. Ed. 169]; and hence the state courts have no power to revise the action of the federal courts, nor the federal the state, except where the federal Constitution or laws are involved. But this is no reason why the state courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent, and not denied.' We are not disposed to believe that the exercise of jurisdiction by the state courts will be attended by any appreciable inconvenience or confusion; but, be this as it may, it affords no reason for declining a jurisdiction conferred by law. The existence of the jurisdiction creates an implication of duty to exercise it, and that its exercise may be onerous does not militate against that implication. * * * We conclude that rights arising under the act in question may be enforced, as of right, in the courts of the states when their jurisdiction, as prescribed by local laws, is adequate to the occasion."

[4] The learned court at Special Term, following the case of Kayser & Co. v. Italian Silk Underwear Co., 160 App. Div. 607, 146 N. Y. Supp. 22, reached the conclusion that the action was maintainable in the courts of this state, in harmony with the authorities above cited, but in sustaining the plaintiff's action in this regard gave an affirmative judgment to the defendant, a wrongdoer, permitting it to make use of the word "Oneida," as an address upon the pan of the trap, while excluding the corporate name of the defendant from the pan as an invasion of the plaintiff's registered trade-mark.  This seems to us like a fanciful use of the jurisdiction of the court, and one calculated to perpetuate the fraudulent purpose of the defendant, rather than serve the well-being of the plaintiff, which has taken all the steps to preserve its right in its good will.  The plaintiff has marketed its traps at a large expense for many years, the advertising has been of the "Oneida Community Game Traps," and with various subordinate uses of the word "Oneida" in connection with the several sizes and peculiar makes, and each one of the traps has borne upon the pan, in a circular form, the words "Victor Oneida Community, N. Y.," or "S. Newhouse, Oneida Community, N. Y.," or with the "N. Y." left off, with variations for the other brands.  The registered trade-mark is of the words "Oneida Community," and the record in connection with the registration shows that "the trade-mark is usually displayed by stamping the same upon the trap itself"; but under the judgment the plaintiff gets no practical benefit of its registered trade-mark, for the defendant, with no such claim in its answer, is given an affirmative decree permitting it to stamp upon the pan of its traps "Game Traps, Triumph No. 1, Manufactured at Oneida, N. Y.," which game traps are concededly made for the purpose of entering into competition with the plaintiff's traps, being built upon substantially the same model as the "Victor," which has an established trade.  But why should the defendant, who is violating the plaintiff's rights, be given affirmative relief?  The learned court at Special Term seems very tender of the invader of the plaintiff's rights; we are told that:

"I find the address on the trap is necessary to this defendant; without it the trapper, far afield, would not know who was the maker of the trap."

But the address does not tell who was the maker of the trap, if this is important to the trapper far afield.  He knows that they are game traps.  He knows that it is marked "Triumph No. 1," and that it purports to be manufactured at "Oneida, N. Y."; and this the plaintiff contends, and properly, we believe, under the circumstances of this case, that it tends to carry the impression that the trap is one manufactured by the Oneida Community, which has an established reputation in the manufacture of these traps.  The plaintiff, which has builded up this reputation, gets no benefit from this judgment; it might just as well be without the judgment.  The essential vice of the judgment, in so far as it relates to the plaintiff, is that it permits the defendant to make use of the dominant word in its trade-mark at the very point where the plaintiff has displayed for years the words "Oneida Community."

It is perfectly true that the defendant has the right to manufacture game traps at Oneida; but it has no right, as against the plaintiff's registered trade-mark, to make use of the word "Oneida" in such a manner as to carry the idea to its customers that it is supplying the market with the Oneida Community game traps, and there can be little doubt, despite the ingenious excuses offered, that the Oneida Game Trap Company was created and located in the city of Oneida for the very purpose of accomplishing this result. It was the name which was identified with the game trap business of the world; 92 per cent. of all the game traps manufactured were made by the Oneida Community, Limited, with factories at or near Oneida and at Niagara Falls, and the name "Oneida" in association with the game trap business had a value which the former employés of the Oneida Community, Limited, well knew and understood, and upon the suit of the plaintiff, to protect its rights, the defendant has a judgment which will enable it to so far imitate the goods of the plaintiff, in markings, as to readily deceive those who are not looking particularly to the exact name of the plaintiff corporation. If we follow the suggestion of Lord Bacon that in the interpretation of statutes we are "to note and single out the material words whereupon the statute is framed, for there are in every statute certain words which are as veins where the life and blood of the statute cometh," we shall readily understand that "Oneida" is the material word in the trade-mark of the plaintiff, and when this word is used in the same location upon the trap of the defendant that it occupies upon the trap long manufactured and sold by the plaintiff, it cannot be doubted that it is such an invasion of the rights of the plaintiff in its trade-mark as to entitle it to adequate protection, such as was granted in the case of Kayser & Co. v. Italian Silk Underwear Co., supra, where the corporation was restrained from the use of the word "Italian" in its corporate name.

The defendant here does not claim to be entitled to the judgment rendered; it appeals from so much of the judgment as gives the plaintiff any relief whatever, and in its answer claims to be entitled to a judgment dismissing the complaint. Its contention is that it has a right, not to the judgment rendered, but to a judgment permitting it to continue to use the name "Oneida Game Trap Company," and to have this name and the address, "Oneida, N. Y.," stamped upon the pan of its traps; it insists that it has not violated any of the rights of the plaintiff under its registered trade-mark. It specifically asks to have the judgment reversed in so far as it declares:

"That the name 'Oneida Game Trap Company, Incorporated,' is a colorable imitation of plaintiff's trade-mark 'Oneida Community, Limited,' but only so by reason of the stamping on the pan; the phrase or wording in its setting upon the round pan, taken together, effects the violation. Defendant cannot use it in that connection."

It likewise asks to have the judgment reversed in so far as the judgment provides that:

"The defendant and its agents, servants, and employés are, and each of them is, hereby enjoined and restrained from the use of its corporate name as now made up on the pan of its trap. It may place its corporate name upon any other part of its trap. It may stamp upon the pan of its trap its address, coupled with other words substantially as follows: 'Game Traps, Triumph

No. 1, Manufactured at Oneida, N. Y.' It may insert any of its brands in place of 'Triumph.' "

That is, the defendant, which has been guilty of a colorable immitation of plaintiff's trade-mark, which has sought by artifice to defraud the plaintiff of its rights under its registration, is told that it cannot do the thing which it has wrongfully done, but that it may do something else. It may make conspicuous the fact that it is manufactured at Oneida, this word having been identified for 60 years with the principal manufacture of game traps in the world, placing this announcement where the plaintiff has for years made its announcement that the traps were the product of the Oneida Community—upon the pan of the trap —and then that it might place its corporate name upon any other part of the trap. This does not appear to us to be the proper disposition of this case. Leaving entirely out of the question the many and important facts which point strongly to unfair competition, we are of the opinion that the use of the corporate name "Oneida Game Trap Company," in connection with the production of traps to enter into competition with the Oneida Community, Limited, traps, is a colorable imitation of plaintiff's trade-mark, that it was clearly designed to work the same mischief which was involved in the case of Kayser & Co. v. Italian Silk Underwear Co., supra, and that in enacting the trade-mark act of 1905, and inserting the provisos in section 5 thereof, Congress did not intend to provide for a barren notice of an ineffectual claim, but to confer definite rights, and an applicant properly registered under the act becomes the owner of the trade-mark and entitled to be protected in its use as such. Thaddeus Davids Co. v. Davids, 233 U. S. 461, 34 Sup. Ct. 648, 58 L. Ed. 1046.

In a case of unfair competition it may be necessary to show intent to deceive the public, but in a case for violation of a properly registered trade-mark it is not necessary to show wrongful intent or facts justifying an inference of such intent. Thaddeus Davids Co. v. Davids, supra. It is sufficient that the rights intended to have been secured by the registration have been invaded, and the defendant, having wrongfully sought to take that which belongs to the plaintiff, is not entitled in a court of equity to "something just as good." The plaintiff is entitled to a practical injunction, one which will secure it in the right to the exclusive use of the word "Oneida" in connection with the manufacture of game traps, and to this end the defendant should be restrained from making use of its corporate name, as well as the stamping of the word "Oneida" upon its traps. It is not the province of a court of equity to aid wrongdoers. It fulfills its mission when it has restrained the commission of a wrong, leaving the wrongdoer to figure out for himself how far he can disregard the mandate of the court and the requirements of a clean conscience.

Let the findings of fact and conclusions of law be amended in harmony with this opinion; such findings and conclusions to be submitted to one of the justices of this court for approval. Costs are awarded to the plaintiff.

Judgment modified in accordance with opinion, and, as modified, affirmed, with costs to plaintiff. Order to be settled before WOODWARD, J., on notice. All concur.