KILMER v. DR. KILMER & CO.

(Supreme Court, Special Term, Broome County.   September 3, 1915.)

1. INJUNCTION &⇒59—VIOLATION OF CONTRACT—RECEPTION OF MAIL.
   Plaintiff, a physician and a member of a partnership, composed of himself and his nonprofessional brother, engaged in the manufacture and sale of proprietary remedies, sold his interest in the business, including the firm name and good will, to his brother.   The contract provided that all mail addressed to plaintiff, without regard to affix or prefix, unless it be "Co." or "Company," should be opened by him only.   All mail addressed to the company under several enumerated forms should be opened by it only.   The partnership subsequently transferred all its property to a corporation of the same name.   *Held,* that under this contract injunction would lie to restrain defendant from receiving and opening any mail addressed in a manner from which it appeared that the communication was intended for a physician personally or professionally, though followed by words indicating a firm or corporation, or any letter marked "Personal."
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 114–116, 128; Dec. Dig. &⇒59.]

2. INJUNCTION &⇒128—EVIDENCE—VIOLATION OF CONTRACTS—PRACTICE OF MEDICINE.
   In a suit for an injunction to restrain violation of a contract for the sale of an undivided interest in a proprietary remedy business, evidence *held* not to show that the defendant company practiced medicine.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 278; Dec. Dig. &⇒128.]

3. GOOD WILL &⇒6—CONSTRUCTION OF CONTRACT—FIRM NAME AND BUSINESS.
   Plaintiff, a physician and a member of a partnership, composed of himself and his brother engaged in the manufacture and sale of proprietary remedies, sold his interest in the business, including the firm name and good will to his brother.   The contract enumerated the remedies which defendant had a right to manufacture, and provided that the remaining partner should continue to compound such medicines and sell them.   Provision was also made as to who should be entitled to open mail received.   The business was later incorporated under the same name. *Held,* that defendant had the right to its corporate name, and to compound and sell the remedies transferred to it, but had no right to use the name of plaintiff in connection with its business in such a way as to lead .the public to believe that he was a physician connected therewith, passing upon the physical condition of people afflicted with disease, or prescribing for them.
   [Ed. Note.—For other cases, see Good Will, Cent. Dig. §§ 2–5; Dec. Dig. &⇒6.]

Suit by S. Andral Kilmer against Dr. Kilmer & Co., a corporation, for an injunction to restrain defendant from violating the terms of a written contract.   Writ granted.

Rollin W. Meeker, of Binghamton, and Joseph Cheney, for plaintiff.
Curtis, Keenan & Tuthill, of Binghamton, and William Nottingham, of Syracuse, for defendant.

KILEY, J.   For some years prior to March, 1892, S. Andral Kilmer, a physician and surgeon of Binghamton, N. Y., and Jonas M. Kilmer, his brother, of the same city, were engaged as copartners in the manufacture and sale of Dr. Kilmer's Standard Herbal Remedies, under

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the firm name of Dr. Kilmer & Co.   On the 14th day of March, 1892, by an instrument in writing, and in consideration of the payment to Dr. S. Andral Kilmer of $40,000, he sold to his brother and partner his equal undivided one-half interest in the real estate and personal property of said firm of Dr. Kilmer & Co.   In and by that contract it is agreed that:

"The term 'personal property' shall include all the trade-marks and copyrights, labels, wrappers, circulars, and pamphlets of the now firm of Dr. Kilmer & Co.; also the firm name, Dr. Kilmer & Co., and the good will of said firm."

The contract further designates the Standard Herbal Remedies transferred therein as:

"Female Remedy; Autumn Leaf Extracts; U & O Ointment; Female Remedy Complete; Ocean Weed Heart Remedy; Swamp Root Kidney, Liver and Bladder Cure; Indian Cough Cure (Consumption Oil); Prompt Parilla Liver Pills; and all receipts from which the same have heretofore been manufactured, of which said Standard Herbal Remedies the said Jonas M. Kilmer shall have the exclusive right of manufacture and sale."

By paragraph 4 of the contract of sale certain remedies not included above, and of which S. Andral Kilmer was the sole individual owner, were designated as follows:

"One bottle A. B.; one bottle B. B.; one package D. H. M.; one inhaler;" also "Infallible Treatment, consisting of White Positive Drops, Yellow Negative Drops, Dry Herbal Compound, and Generative Application;" also "Cancer and Tumor Syrup, Cancer and Tumor Dissolvent, Cancer and Tumor Infection;" also "Female Swelled Neck Cure."

It was provided in and by said contract that the said Jonas M. Kilmer should continue to compound the medicines belonging to Dr. Kilmer individually, and above set forth, advertise and sell the same, and pay to the doctor monthly 25 per cent. of the gross amount of said sales.

Paragraph 8 of said contract of sale provides that the Invalid's Guide to Health, published theretofore by the said firm of Dr. Kilmer & Co., should continue to carry on its pages and in its printed matter certain articles then therein contained, the portrait of Dr. S. Andral Kilmer; also the same printing under said portrait, except that it might be in larger type; also the portrait of Dr. Kilmer, representing him making examination of the throat through an instrument known as the laryngoscope.   The contract also provided that the name S. Andral Kilmer should not be published in said Invalid's Guide to Health in any place that it did not therein appear without the consent of Dr. Kilmer.

By the ninth paragraph of said contract of sale it was provided that all letters and mail matter coming to the Binghamton post office, addressed to S. Andral Kilmer, or S. A. Kilmer, without regard to affix or prefix to said address, unless said affix or prefix shall be "Co." or "Company," shall be received and opened only by S. Andral Kilmer, or by his authority.   By paragraph 10 of said contract of sale it is provided:

"The letters and mail matter coming to the Binghamton post office, or any other post office, addressed to Dr. Kilmer & Co., Dr. Kilmer Medicine Co., the

Dr. Kilmer Medicine Co., Dr. Kilmer & Co.'s Dispensary, and for the present, until Dr. S. Andral Kilmer shall engage in some business by the name of S. A. Kilmer & Co., or S. Andral Kilmer & Co., or Dr. S. A. Kilmer & Co., or Dr. S. Andral Kilmer & Co., all letters containing such addresses coming to the post office shall be received and opened only by Dr. Kilmer & Co., but after the said S. Andral Kilmer shall go into business under either of said four names said S. Andral Kilmer shall be entitled to receive from the post-office all letters addressed in either of said four names."

It is further provided by said contract that, in the event any letters should be received by either of said parties belonging to the other, they shall be promptly forwarded to that party, from the contents of which it was determined who should receive it; that neither should answer any letter by the name of the other, or by the name of Dr. Kilmer & Co., except the party entitled to answer the same.

The business was carried on, so far as Dr. Kilmer was concerned, under the contract above referred to until March 18, 1901, when another agreement was entered into between Jonas M. Kilmer and S. Andral Kilmer, the plaintiff in this action, in and by which Dr. S. Andral Kilmer, the plaintiff in this action, sold to Jonas M. Kilmer his interest in the several proprietary medicines, cures, and treatments specified in paragraph 4 of the contract of March 14, 1892, with exclusive right to manufacture, sell, or suppress the same, and also released the said Jonas M. Kilmer, his former copartner and the party of the second part to the contract of March 14, 1892, from the obligation assumed by the said Jonas M. Kilmer in paragraph 8 of that contract, viz. the publication of the Invalid's Guide to Health, as therein provided; otherwise, the contract of March 14, 1892, was recognized and reaffirmed by the said parties in all respects wherein it was not "specifically modified by this agreement," referring to the contract of March, 1901.

In December, 1906, Jonas M. Kilmer sold to his son, Willis Sharpe Kilmer, an undivided one-half interest in the business known as Dr. Kilmer & Co. They formed a copartnership, and continued to manufacture and sell the remedies of Dr. Kilmer & Co. as such copartnership until January, 1909, when the business was incorporated under the name of Dr. Kilmer & Co., with Jonas M. Kilmer, Willis Sharpe Kilmer, and Jerome B. Hadsill, all of Binghamton, N. Y., as incorporators. In the same month, and a few days thereafter, the copartnership, Dr. Kilmer & Co., transferred all of its said business and assets to the said corporation, which said corporation has since done business at Binghamton, N. Y., compounding, manufacturing, and selling the remedies which had been so compounded, manufactured, and sold for many years previously by the several copartnerships and parties above mentioned. Dr. S. Andral Kilmer originated and compounded all of those remedies in the first instance, and the business of this defendant is supposed to be that of compounding now from the original recipes of Dr. Kilmer the original remedies, manufacturing and selling quantities of them upon the market.

This action is brought by the plaintiff, Dr. S. Andral Kilmer, seeking to enjoin the defendant from prefixing to its corporate name the term "Dr." or "Doctor," or using any language, portrait, or adver-

tising representation which actually deceives, or is liable to deceive, the public; in other words, cause the public to believe that Dr. S. Andral Kilmer is still connected with said corporation, receiving disclosures and descriptions of the diseases common to humanity, and prescribing therefor remedies which the public seek as a cure for the diseases described by them in their communications, and with which the parties claim to be afflicted; that said defendant be enjoined from receiving or opening any mail addressed to or intended for the plaintiff, and to restrain the defendant from selling medicine or appliances in the name of plaintiff, or in any way violating the terms of the written contract entered into between the plaintiff and Jonas M. Kilmer; also that a referee be appointed to receive the mail and distribute it between the respective parties.

[1] Consideration will first be had with reference to the mail matter. Plaintiff urges that the same course, in that regard, should be followed, as laid down by the Court of Appeals in Dr. David Kennedy Corporation v. Kennedy, 165 N. Y. 353, 59 N. E. 133. It is not considered feasible or necessary under the evidence in this case to follow the Kennedy Case so far as the appointment of a referee is desired. The evidence discloses that during the past six or seven years the defendant, through its agents and servants, both male and female, have opened private and confidential letters intended for a physician qualified to diagnose, advise, and prescribe for diseases of the most private nature, and tends to generate the same feeling of disapproval that is shown by the several courts writing in the Kennedy Case; and it also appears from the evidence that in one of the years 1907, 1908, or 1909, or thereabouts, the plaintiff, through his attorney, took up the matter with a representative of the defendant, and agreed that only mail addressed to Dr. Kilmer & Co., Dr. Kilmer Medicine Co., the Dr. Kilmer Medicine Co., or Dr. Kilmer & Co.'s Dispensary, should be opened by the defendant; that all mail addressed to Dr. S. Andral Kilmer & Co., S. Andral Kilmer & Co., S. A. Kilmer & Co., Dr. S. A. Kilmer & Co., Dr. S. Andral Kilmer & Company, S. Andral Kilmer & Company, S. A. Kilmer & Company, Dr. S. A. Kilmer & Company, Dr. S. Andral Kilmer, S. Andral Kilmer, M. D., S. Andral Kilmer, Dr. S. A. Kilmer, S. A. Kilmer, M. D., S.·A. Kilmer, Andral Kilmer, Andral Kilmer, M. D., Dr. Andral Kilmer, S. Kilmer, S. Kilmer, M. D., Dr. S. Kilmer, or Dr. Kilmer, should be received by the plaintiff, Dr. S. Andral Kilmer.

Upon the trial of this action there was introduced in evidence about 150 letters received and opened by this defendant that were intended for and addressed to the plaintiff, and there were upwards of 125 of them not addressed as agreed and designated in the first list of names given above as the address which entitled the defendant to open the letters coming to either place of business. Many of these letters were marked "Personal." The defendant knew, or ought to know, that a letter marked "Personal" was not intended for a corporation, but was intended for the doctor whose name appears upon the letter, no matter what prefix or affix appeared with the name thereon. The defendant knew, or ought to have known, that when a person writes

to any address containing the name or designation of a physician, and marks it "Personal," that letter contains a private and confidential communication, not intended to pass through hands who have no knowledge of medicine, and have no right to know about the malady with which the writer is afflicted.

The plaintiff is entitled to an injunction restraining the defendant from receiving and opening any letters addressed by the last list of names, and, in addition, any letter that has "Personal" written upon the envelope, with an address containing Dr. Kilmer, or any other title showing that it is a physician with whom the writer intends to communicate.

[2] The pleadings raise the question, and it appears from the contract of March, 1892, and from the evidence, that the defendant has no physician connected with its business, and that it has agreed that it shall not employ any physician, unless such physician was a son or descendant of Jonas M. Kilmer, and that therefore the defendant is illegally practicing medicine, violative of the provisions of the Public Health Law of this state. It cannot be held, from the evidence in this case, that the defendant is practicing medicine. The present defendant is entitled to all of the rights secured to Jonas M. Kilmer in the contracts of 1892 and 1901. It is provided in the contract of 1892, and confirmed in the contract of 1901:

"This contract shall apply to and bind the heirs and assigns of the respective parties hereto."

[3] The defendant has a right to its corporate name, and, under World's Dispensary Medical Association v. Robert J. Pierce, 203 N. Y. 419, 96 N. E. 738, the defendant has a right to compound and sell the remedies transferred to it under and by virtue of the several contracts hereinbefore referred to. The defendant has no right, however, to use the name of the plaintiff in connection with its business in such a way as is calculated to lead the public to believe that he is a physician connected with or in charge of the medical part of its business, passing upon the physical condition of people afflicted with disease, making analysis of either blood or urine, and then prescribing medicines appropriate for those diseases. In some respects the defendant violates this right of the plaintiff. To be specific is to call down criticism from the Appellate Division in this Department. In the case of Oneida Community v. Oneida Game Trap Co., reported in 154 N. Y. Supp. 391, the trial court sought to depart from the old rule of a general injunction, and to say what rights the several parties had under the judgment directed. The Appellate Division said of that attempt:

"It is not the province of a court of equity to aid wrongdoers. It fulfills its mission when it has restrained the commission of a wrong, leaving the wrongdoer to figure out for himself how far he can disregard the mandate of the court and the requirements of a clean conscience."

A suggestion will be made, however, that the use of Dr. Kilmer's name in connection with the Pile Pipe sent out by the defendant is not warranted under any contract had between the plaintiff and Jonas M. Kilmer. The picture of Dr. S. Andral Kilmer, and the other fea-

tures attendant to, and the peculiar wording of, the certificate of purity therewith, are calculated to mislead the public, and to cause those reading it to believe that Dr. Kilmer is connected with the business of the defendant and in actual supervision of its prescription department, and other departments requiring consultation and analysis. It is not warranted by any contract, and is not a right secured by any contract, had between the plaintiff and Jonas M. Kilmer.

The defendant has the right to manufacture and distribute for sale, and advertise the same, all of the medicines originated by Dr. S. Andral Kilmer and transferred to Jonas M. Kilmer; it has a right to designate them as so originated and compounded by Dr. Kilmer; but it has no right to so use the plaintiff's name as to lead the public to believe that he is still responsible, by reason of active supervision, for the contents of a bottle covered in part, by his portrait and name.

These suggestions are warranted by the holding in World's Dispensary Medical Association v. Robert J. Pierce, supra. It is not intended that these suggestions cover all of the features which would be violative of the general injunction granted herein.

Injunction is granted in accordance with the foregoing. Costs to plaintiff. Let findings and judgment be prepared.