## LUCIEN LELONG, Inc., v. GEORGE W. BUTTON CORPORATION.

District Court, S. D. New York.

April 26, 1943.

Duell & Kane, of New York City (Charles W. Hills, Jr. and Alexander C. Mabee, both of Chicago, Ill., of counsel), for plaintiff.

Mock & Blum, of New York City, for defendant.

CLANCY, District Judge.

This is an action for unfair competition. Plaintiff markets its cologne in a bottle with a globular base holding most of the fluid and a long narrow neck. The globular base of the smallest bottle is about two inches high and its neck is two and one

half inches. The base of the largest is three inches high and its neck is nearly four inches. The diameter of the globular base of the smallest bottle is about two and one quarter inches and the diameter of the largest about three and a quarter inches. The proportions of globe and neck are maintained with a high degree of accuracy through the various sizes. There are no decorations on the globular base but the neck of each bottle is wrapped about with a gold or silver collar and in one instance with a black collar. On the collar the manufacturer's name and a fanciful word, which is a reference to the bottle's contents, is clearly printed. The globular base appears in all to be crackled glass; in one case it has a stippled finish and in another a hobnailed finish. The part of the cork protruding from the neck is usually a silver or gold sphere but in one instance is a glass prism. At the top of the neck the glass thickens or extrudes to form a bevelled band.

The defendant puts out a smaller bottle whose proportions are so nearly like the plaintiff's that the eye readily perceives no difference in the symmetry if there be any. The top of the globular part of its bottle is decorated with a paper collar, giving the appearance of flowers on a gold and black background. Its stopper or cork is spherical like the plaintiff's though plain in one instance and a flat cap in another. The neck of the bottle which is topped with a bevelled band too is enclosed in a decorative collar on which is printed, in not clearly contrasting colors, the name of the fragrance of the perfume and a name which is a registered trade-mark of the manufacturer and New York is added so that it is on the back when one reads the label. Another of its bottles has no decorations at all but a label so small that only when it is held near can the eye read the words on it which are the name of the fragrance and another registered trade-mark, followed by N. Y. The defendant suggests that the inquisitive may freely consult the registry of trade-marks at Washington and so discover the name of the manufacturer but we do not think this is suggested seriously for the consuming public. These trade-marks are fanciful like the fanciful names given the contents of each of plaintiff's bottles and the ordinary buyer would give them no other meaning dispite the addition of New York or N. Y. The defendant's bottle is a copy of plaintiff's and its doubtful dress is, we find,

intended to conceal the difference in manufacture and origin of the contents of the two.

We need not call the shape of plaintiff's bottle unique but when plaintiff adopted it and marketed its merchandise in it in 1933 the shape was novel in the cosmetic trade and not a stock bottle of any manufacturer. It has spent large sums of money in popularizing the bottle as a vehicle for the sale of its cologne and did so even in 1933 and the evidence clearly shows that from that year on the bottle's contents were identified as the plaintiff's manufacture by the bottle which was the container. The defendant said that his firm had discussed use of its bottle in 1933 and started selling toilet water in it early in 1934. But it was unable to supply any corroborating evidence whatever—a light task we think—and we find as a fact that it was not until some time in 1937 that it used its present bottle. The field of defendant's operations is largely ten cent stores and chain drug stores but in the last two or three years it has been spreading to a better class of shop. It has never advertised its bottle in any trade paper. Defendant ventures no criticism of the plaintiff's witnesses' testimony of their buying habits but contents itself with criticizing their ignorance of the output of other manufacturers who use bottles with globular bases. We regard this criticism merely as a distraction and not as a successful attack on the weight of the witnesses' testimony. Defendant questioned all of the witnesses about their reactions to an exhibit which was a photograph of several of the defendant's bottles whose ordinary spherical stoppers have been supplanted by flat caps, on the long necks of which were printed by the defendant, in large letters one above the other, the names of cosmetic manufacturers who are at least as well known and possibly better known than the plaintiff. This exhibit was a composition of the defendant and makes no approach to the actual facts involved here. We regard it rather a test of vision than of marketing intelligence or psychology. Each bottle in the photograph is a combination of two contradictory marks—the bottle and the imaginary name and no one could reach a reasonable conclusion about the contents of the containers in the picture. The witnesses, almost without exception, stated that they would not know what to think about such a bottle so marked and we share their confusion. But that confusion conclusively demonstrated

that in vending cosmetic fluids the bottle's form, where its use is well established and advertised, is the predominating, if not the single, mark of origin. We find that the plaintiff's bottle in suit has been so fixed in the minds of the patrons of the cosmetic market as the distinctive sign of plaintiff's manufacture of its content that only a sign equally distinctive and attractive might make the use of defendant's bottle in that market honest. We do not find as a fact that any sign might secure that honesty but observe that no tag could do it and since cologne bottles are used for the bedroom and not the pantry shelf, any requirement for labelling that would fit this case would make the bottle as a container of cologne unsalable. The problem was well put by the plaintiff's attorney on the trial when he said that the form of the bottle constituted ninety-five percent of the plaintiff's case.

■ The case, therefore, comes down to this: Can the defendant be enjoined from employing a bottle of the shape of the plaintiff's bottle to market its wares? The right to the manner of use of a form is always conditioned by the state of the market it invades and in a given case the right to use the form may be. If the use of a particular and a distinct form induces buying by a confused and deceived purchaser, the law will forbid it. There is plenty of authority for enjoining the use of a bottle of a particular shape. We regard Charles E. Hires Co. v. Consumers' Co., 7 Cir., 100 F. 809, as very like this case in its facts, where the defendant deliberately chose for one of its products a bottle of a peculiar form used by the plaintiff. In A. Bauer & Co. v. La Societe Anonyme de la Distillerie de la Liqueur Benedictine, 7 Cir., 120 F. 74, the defendant was forbidden to use a black glass bottle of ungainly shape because the trade knew it as a container for plaintiff's cordial. There were incidental marks by labels and seals involved as identifying features there but use of the bottle of the given shape was one of the things enjoined. So it was in Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 S.Ct. 7, 45 L.Ed. 60, and in Gulden v. Chance, 3 Cir., 182 F. 303. In H. E. Winterton Gum Co. v. Autosales Gum & C. Co., 6 Cir., 211 F. 612, the shape of a round box was one of the elements of the dress of complainant's product which was held to be distinctive and deserving of protection. In Cook & Bernheimer Co.

v. Ross, C.C., 73 F. 203, the form of the bottle was the only thing at issue in the case, where the labels, because they advertised the same kind of whiskey but different grades, could hardly be sufficient to distinguish the parties' products and the court enjoined imitation of the plaintiff's bottle.

■ The New York law does not refine the common law in this phase of the law of unfair competition. In Brown v. Doscher, 147 N.Y. 647, 42 N.E. 268, the court said the law did not entitle a party to appropriate a form of package and gave Enoch Morgan's Sons Co. v. Troxell, 89 N.Y. 292, 42 Am.Rep. 294, as its authority. The form was not an issue in the Brown v. Doscher case in the lower court, 73 Hun 107, 26 N.Y.S. 951, and had not been found a mark of plaintiff's goods. It was not argued by the lawyers on appeal, 147 N.Y. at pages 648 and 649, 42 N.E. at page 268. What the court, in Morgan's Sons Co. v. Troxell, had said was that "a form of package" could not be appropriated as a trade-mark when it was referring to the square surface of a cake of soap. In Fischer v. Blank, 138 N.Y. 244, 33 N.E. 1040, the plaintiff had packed tea in a parallelepiped constituted of a wrapper decorated with disks and labels. The lower court held the plaintiff was entitled to the exclusive use of the characteristic form and style of package and adjudged that the defendant infringed on plaintiff's rights by using for his tea a package with wrapper, disks and labels similar to those adopted and used by the plaintiff. The opinion said that "under ordinary circumstances the adoption of packages of a peculiar form * * * is not sufficient to constitute a trade-mark." The phrase "under ordinary circumstances" makes this statement an abstraction and that it was uttered in vacuo appears from the holding that the plaintiff had acquired "an exclusive right to the use of packages of the shape, style, and dimensions in which they exposed their goods for sale, with the other implements, devices, and other distinctive features delineated or impressed upon them." To explain its own departure from its earlier abstraction which we have quoted, the court concluded by saying: "No inflexible rule can be laid down. Each case must, in a measure, be a law unto itself." In that case, the simplest of forms, a parallelepiped, was thus held to be one element of the dress of the plaintiff's goods

which could not be copied. Either the decorative elements that went with it or the form or both had to be changed in order to change the appearance of the defendant's package. In International Latex Corp. v. Scheinberg, 263 App.Div. 861, 32 N.Y.S.2d 591, 592, the receptacle in which the plaintiff's goods were marketed was a tube, capped by colored caps. The court restrained the defendants from "using the tubular packages, the caps * * * so similar to * * * plaintiff's as might tend to deceive the trade or the public." In Lever Bros. Co. v. Eavenson & Sons, Inc., 157 Misc. 297, 283 N.Y.S. 398, the court enjoined the imitation of the shape and color of a bar of soap. At 249 A.D. 617, 292 N.Y.S. 182, the court stated that this was "modified by restraining the defendants from making any soap * * * which possesses a carbolic * * * odor and which is in appearance and design calculated to deceive the ordinary purchaser." Design involved the shape of the cake—the restriction of color was deleted. The court, in Fischer v. Blank, supra, added: "The true test, we think, is whether the resemblance is such that it is calculated to deceive, and does in fact deceive, the ordinary buyer, making his purchases under the ordinary conditions which prevail in the conduct of the particular traffic to which the controversy relates." This is the ordinary common law and we find no New York case which deviates from it.

■ In 1934 the president of the plaintiff acquired a design patent of the bottle it has used since and defendant argues that this deprives plaintiff of the right to complain now of the defendant's mode of competition and cites Corning Glass Works v. Pasmentier, D.C., 30 F.Supp. 477; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; and Cohan v. Robbins Music Corp., 244 App.Div. 697, 280 N.Y.S. 571. The Cohan case involved a copyright and is irrelevant. In the other two cases the defendants had practiced the methods of expired process patents in manufacture. The form in the Kellogg case was the form of the article and associated with it, not with the manufacturer. The plaintiff here is not complaining of the defendant's making or selling a bottle but of its using a bottle in the cosmetic trade to gull the public and to injure the plaintiff.

Plaintiff's bottle appears to have intrinsic value and its design gives it decorative competence as defendant suggested on the trial. The merits of the bottle may well have been an inducement to condition the buyers' minds more readily to adopt the bottles' shape as a mark of origin but there is no evidence that any purchaser was buying the bottle. A shopper may well have in mind a second use for wrapping paper and twine while a bundle is being wrapped. In Cook & Bernheimer v. Ross, supra, the design of the bottle was patented and the court paid no attention to that feature of the case.

■ In 1937 the plaintiff started an action against another party than the defendant for unfair competition and for infringement of its design patent. In answer to an interrogatory presented by it in that case, the name of the defendant was given as a user of an example of adverse use in the endeavor to invalidate its design patent. It made no investigation of this allegation. The action was settled. Defendant now argues that plaintiff's failure to investigate and object in 1938 was laches. With this we do not agree and even if we did, this being an action to vindicate a continuing legal right, laches would be no defense, Galway v. Metropolitan E. R. Co., 128 N.Y. 132, at 155, 28 N.E. 479, 13 L.R.A. 788, and certainly no reason to deny injunctive relief. We have already said that defendant's operations had been largely in another field than that occupied by the plaintiff. The defendant itself does not make any point of this difference as it cannot very well inasmuch as the two fields are contiguous and always overlapped to an extent. Attribution to plaintiff of the manufacture of defendant's product as a consequence of the bottle's use is harm enough.

■ We, therefore, grant an injunction forbidding the defendant to merchandise in the retail cosmetic trade its cologne or bath water by whatever name it may be known in bottles, however decorated or labelled, having the same proportions and symmetry as the plaintiff's bottle or so substantially like it in proportions and symmetry as to be confusing. Charles E. Hires v. Consumers' Co., supra, 100 F. at pages 813 and 814; Oneida Community, Ltd., v. Oneida Game T. Co., Inc., 168 App.Div. 769, at page 782, 154 N.Y.S. 391.