**LANDSCAPE FORMS, INC.,**
Plaintiff–Appellee,

v.

**COLUMBIA CASCADE COMPANY,**
Defendant–Appellant.

No. 2080, Docket 95–7343.

United States Court of Appeals,
Second Circuit.

Argued June 8, 1995.

Decided Nov. 13, 1995.

Frederick B. Simpson, Albertson, NY (Ahmuty, Demers & McManus; Allen G. Reiter, Siller, Wilk & Mencher, New York, NY, of counsel), for Defendant–Appellant.

Susan E. Farley, Albany, NY (Nicholas Mesiti, Douglas H. Tulley, Jr., Heslin & Rothenberg, P.C., of counsel), for Plaintiff–Appellee.

Before: OAKES, MINER and LEVAL, Circuit Judges.

OAKES, Senior Circuit Judge:

Columbia Cascade Company ("Columbia") appeals from an April 7, 1995, order of the United States District Court for the Southern District of New York, John E. Sprizzo, *Judge,* granting a preliminary injunction prohibiting Columbia from advertising or selling a particular line of its outdoor furniture in the United States. In issuing the injunction, the district court found that Landscape Forms, Inc. ("Landscape") had shown a likelihood of success on the merits of its claim that Columbia's "Colonnade" furniture line infringed the trade dress of the "Petoskey" furniture line produced by Landscape, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). We find that the district court failed to consider whether the design of the Petoskey furniture was "functional" and thus not protectable trade dress, and we remand for consideration of that issue.

*Background*

Columbia and Landscape manufacture and sell site furnishings typically found in parks, airports and large office complexes. Both companies sell these furnishings to the same markets in the United States, namely, large commercial and municipal entities. The Petoskey furniture at issue in this case was originally designed by the Beckett & Raider architectural firm for a marina in Petoskey, Michigan. An executive of Landscape saw the furniture installed at the marina, and Landscape subsequently contracted with Beckett & Raider to help design and develop the Petoskey Collection, which Landscape introduced in the fall of 1989.

The Petoskey furniture has a modern appearance. It is made of three-inch metal tubing which is bent to form the legs and the support for the furniture. The most notable pieces in the collection are the benches, which are shaped and curved to fit the human form and which are supported on only two or three legs, giving them the appearance of being suspended in air.

In the late spring of 1993, Columbia's sales department reported to management that there was considerable interest in the style of furniture offered only by Landscape in its Petoskey line. Columbia's customers evidently asked its sales representatives if Columbia could produce similar-looking furniture at a competitive price. In response, Columbia designed its Colonnade line, which emulated the design of the Petoskey furniture. Columbia began marketing the line in industry trade catalogs and through its brochures in early 1994.

Landscape first learned of Columbia's Colonnade line in April 1994 through an article in *Architectural Record,* an industry magazine. Landscape was particularly concerned because Columbia had copied a design feature of a Petoskey trash receptacle for which Landscape had a patent. Landscape informed Columbia of its patent, and Columbia immediately redesigned its trash receptacle.

On November 9, 1994, Landscape filed a complaint in the Southern District of New York, alleging that Columbia's Colonnade furniture infringed the trade dress of the Petoskey line, in violation of § 43(a) of the Lanham Act and New York state unfair competition and dilution law. On December 30, 1994, Landscape moved for a preliminary injunction, and from January 17 to 19, 1995, the district court held a hearing on the motion. At the close of testimony, the court issued a temporary restraining order prohibiting Columbia from selling or advertising its *Colonnade* furniture.

On February 14, 1995, the district court heard summations and issued an opinion from the bench. The court found that Landscape had demonstrated at least substantial questions going to the merits of its Lanham Act claim. The court found that the trade dress of the Petoskey furniture was distinc-

tive, and, after analyzing the factors set out in Judge Friendly's opinion in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), found that there was a likelihood of confusion between the Colonnade and Petoskey lines. The court further found that the balance of hardships tipped decidedly in favor of Landscape, and, thus, the court held that a preliminary injunction was appropriate. On March 3, 1995, the court issued a preliminary injunction prohibiting Columbia from selling and advertising its Colonnade furniture in the United States. Columbia appealed.

### Discussion

Columbia admits that it copied the Petoskey furniture and further concedes that, while there are some dissimilarities between the Colonnade and Petoskey lines, "to the casual eye they look almost indistinguishable." Tr. of proceedings of Jan. 17, 1995 at 21. Columbia contends, however, that likelihood of confusion was not demonstrated and that the Petoskey design is not a protectable trade dress because it is functional. Because we decide this appeal on the functionality issue, we do not reach the issue of likelihood of confusion.

■ Trade dress at one time "referred only to the manner in which a product was 'dressed up' to go to market with a label, package, display card, and similar packaging elements." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995). The concept has, however, "taken on a more expansive meaning and includes the design and appearance of the product as well as that of the container." *Id.* Trade dress now denotes "essentially [a product's] total image and over-all appearance." *Id.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n. 1, 112 S.Ct. 2753, 2755 n. 1, 120 L.Ed.2d 615 (1992)).

■ In order to maintain an action for trade dress infringement under § 43(a) of the Lanham Act, a plaintiff must show either that its trade dress is inherently distinctive, *Two Pesos*, 505 U.S. at 763, 112 S.Ct. at 2753, or, if the trade dress is not inherently distinctive, that it has acquired a secondary meaning. *Villeroy & Boch Keramische Werke K.G. v. THC Systems, Inc.*, 999 F.2d 619, 620 (2d Cir.1993). Even if such a showing is made, however, a defendant may avoid liability by demonstrating that the allegedly similar trade dress feature is "functional." *Id.*

■ The functionality doctrine limits the scope of trademark protection by "forbid[ding] the use of a product's feature as a trademark where doing so will put a competitor at a significant disadvantage because the feature is 'essential to the use or purpose of the article' or 'affects [its] cost or quality.'" *Qualitex Co. v. Jacobson Products Co.*, —— U.S. ——, ——, 115 S.Ct. 1300, 1306, 131 L.Ed.2d 248 (1995) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982)). The doctrine "prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Id.* at ——, 115 S.Ct. at 1304. The Court in *Qualitex* explained that "if a design's 'aesthetic value' lies in its ability to 'confe[r] a significant benefit that cannot practically be duplicated by the use of alternative designs,' then the design is 'functional.'" *Id.* at ——, 115 S.Ct. at 1306 (quoting The Restatement (Third) of Unfair Competition (the "Restatement") § 17, cmt. c at 175–76 (1995)). The Court further noted that "[t]he 'ultimate test of aesthetic functionality' ... 'is whether the recognition of trademark rights would significantly hinder competition.'" *Id.* (quoting Restatement, *supra*, § 17, cmt. c at 176).

■ Thus, in order for a court to find a product design functional, it must first find that certain features of the design are essential to effective competition in a particular market. *See Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1005–06 (2d Cir.1995); *Villeroy*, 999 F.2d at 621; *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art, Co.*, 916 F.2d 76, 79–81 (2d Cir.1990), *cert. denied*, 499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 720 (1991). In *Wallace*, we affirmed the district court's finding that the baroque curls, roots

and flowers in a silverware design were functional and, thus, not protectable trade dress because, as the district court found, "effective competition" in the "substantial market for baroque silverware ... requires 'use [of] essentially the same scrolls and flowers' as are found on Wallace's silverware." 916 F.2d at 80. In contrast, in *Knitwaves* we found a sweater design to be non-functional where the defendant had "adduced no evidence whatsoever that the number of designs available for 'fall motif' sweaters [was] limited" and, consequently that protection of the design would restrict the defendant's "ability to produce alternative competitive designs." *Knitwaves*, at 1006. Similarly, in *Villeroy*, we found that a basket pattern on hotel china was non-functional where the defendant had not "made the necessary showing that it is at a significant competitive disadvantage ... without the basket pattern." *Villeroy*, 999 F.2d at 621.

■ Although Columbia asserts the functionality defense explicitly on appeal, its assertion of this defense in the district court was, perhaps, somewhat oblique. While its answer asserted as an affirmative defense that "LFI's Petoskey Group Collection does not have an inherently distinctive trade dress ... and has a functional design," Columbia's Answer at 3, Columbia did not mention the functionality doctrine by name at the preliminary injunction hearing. It did argue, however, the essential element of the functionality defense: that it needed to use the design to compete effectively in the market.

For whatever reason, however, the district court did not consider whether the design of the Petoskey furniture is functional and, thus, not eligible for trademark (or trade dress) protection. It did not evaluate whether enjoining Columbia from selling its Colonnade furniture would "significantly hinder" Columbia's ability to compete in the site furnishings market. *See Qualitex*, — U.S. at —, 115 S.Ct. at 1306.

Had the court done so, it would have found a good deal of evidence supporting Columbia's position that it must be allowed to use the Petoskey design in order to compete effectively with Landscape. Columbia's

president, Ken Kirn, testified that customers in California expressed "considerable interest" in furniture with the Petoskey design and approached Columbia's sales representatives asking if Columbia could make furniture with a similar look. Tr. of proceedings of Jan. 19, 1995, at 425–26. Johnson, a landscape architect, testified that two of the most important qualities a purchaser looks for in site furniture are its "overall look" and its durability. *Id.* at 293.

Landscape's former president, Mr. Chipman, testified that the Petoskey benches were unlike any other on the market. He testified that the Petoskey design was unique because it was beautiful and graceful, but at the same time "so massive that ... it would hold up to any urban situation that you are confronted with." Tr. of proceedings of Jan. 17, 1995, at 53. Mr. Main, Landscape's current president, testified that the cantilevered Petoskey design is special because the bench "looks like it is almost floating." *Id.* at 84. Johnson testified to the practical advantages of the design of the Petoskey bench—it is particularly sturdy because it is supported by a single curved metal tube and it is easy to clean underneath the bench because it has only two legs. Tr. of proceedings of Jan. 19, 1995, at 288–89. On the other hand, Mr. Yurk, a design manager for Landscape, testified that an "infinite number" of possible furniture designs exist for two-legged benches, for benches made with metal tubing, and for benches with a curved look. Tr. of proceedings of Jan. 19, 1995, at 396.

Because the district court did not consider the functionality doctrine, however, it failed to weigh this evidence or make factual findings that would assist us in applying the doctrine. We are, thus, unable to review the court's decision that the Petoskey design is protectable. Accordingly, we remand for the district court to consider whether the Petoskey design "confers a significant [competitive] benefit" to Landmark "that cannot practically be duplicated by the use of alternative [furniture] designs," *Qualitex*, — U.S. at —, 115 S.Ct. at 1306 (internal quotations omitted), thus making the design functional and not protectable trade dress.

*Conclusion*

The injunction is vacated and the case is remanded for a full consideration of Columbia's functionality defense.