**NORA BEVERAGES, INC.,**
Plaintiff–Appellant,

v.

The **PERRIER GROUP OF AMERICA, INC.**, Poland Spring Corporation, Zephyrhills Corporation, Arrowhead Water Corporation, and Calistoga Mineral Water Company, Inc., Defendants–Appellees.

Docket No. 00–7709.

United States Court of Appeals, Second Circuit.

Argued March 29, 2001.

Decided Aug. 23, 2001.

Howard G. Slavit, Washington, DC (Slavit & Gill, P.C., of counsel), for Plaintiff–Appellant.

Jeffrey M. Garrod, Roseland, NJ (Linda B. Lewinter, Craig A. Ollenschleger and Orloff, Lowenbach, Stifelman & Siegel, P.A., of counsel), for Defendants–Appellees.

Before: OAKES and STRAUB, Circuit Judges, and RAKOFF, District Judge.[*]

OAKES, Senior Circuit Judge:

In this trade dress infringement case under § 43(a) of the Lanham Trademark Act ("Lanham Act"), 15 U.S.C. § 1125(a) (2000), Nora Beverages, Inc. ("Nora") appeals from a summary judgment order granted by the United States District Court for the District of Connecticut, Ellen Bree Burns, *Judge.* Nora also appeals the verdict against it on its breach of contract claim. Because we agree with the district court that Nora failed to raise a genuine issue of material fact regarding likelihood of confusion and because we believe that the court's evidentiary rulings were not manifestly erroneous, we affirm.

## BACKGROUND

This ten-year dispute involves the trade dress of 1.5–liter plastic bottles used for packaging spring water. Because this case comes before our Court for a second time, we assume familiarity with the facts set forth in our previous opinion, and we address only those facts that are necessary and unique to this appeal. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.* ("*Nora Beverages I*"), 164 F.3d 736 (2d Cir.1998).

Before going into bankruptcy, Nora was a Canadian company engaged in the business of bottling spring water, which it marketed and sold under the brand name NAYA. Since beginning its operation in 1986, Nora bottled its water in 1.5–liter clear, ribbed plastic bottles made from polyethylene terephthalate ("PET"). PET is a clear, strong and environmentally-friendly resin that was developed in the early 1970s by Dupont and is now widely used among bottled drink manufacturers. The ribbed bottles are endowed with a "waist" that creates what Nora refers to as a "bottle upon bottle" effect.[1] A dark blue label with the block letters NAYA outlined in white is wrapped around the upper third of the bottle.

The Perrier Group of America, Inc. ("PGA") is also engaged in the business of bottling water. Through its subsidiaries Poland Spring, Zephyrhills, Arrowhead and Calistoga, PGA sells various regional brands of bottled water throughout the United States. Although these subsidiaries sold bottled water prior to Nora's entry into the market, they did not sell 1.5–liter convenience-size bottles until afterwards.

Wishing to enter the 1.5–liter bottle market, PGA negotiated with two bottle manufacturers to purchase PET bottles for its spring water. After PGA's chosen manufacturer was unable to perform the work, PGA entered into contract negotiations with Nora for the supply of plastic bottles. These negotiations fell through, and PGA ultimately purchased its bottles from another producer.

Nora filed a complaint against PGA on December 3, 1991, alleging, *inter alia,* trade dress infringement and breach of contract. On December 10, 1997, the district court granted summary judgment and dismissed Nora's trade dress and state law claims against PGA and other defendants.

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

1. Photographs of the NAYA bottle and defendant's allegedly infringing bottles, as well as the bottles of two competitors (Evian and North Country), are attached as an appendix.

On December 30, 1998, this Court partially vacated and remanded for further findings the district court's rulings on the trade dress claim and on one related state statutory claim. We remanded in order to allow the district court to conduct a full analysis of the *Polaroid* test used to determine likelihood of confusion. *See Nora Beverages I*, 164 F.3d at 745–46.

As instructed, the district court on remand applied the *Polaroid* factors. The court found that there were no genuine issues of material fact and that no reasonable juror could find that there was a likelihood of confusion between Nora's bottle and the PGA brand bottles. Accordingly, on October 14, 1999, the district court granted PGA summary judgment on the trade dress infringement claim. On May 12, 2000, the court entered a judgment on jury verdict in favor of PGA on the contract claim.

On appeal, Nora argues (1) that the district court improperly dismissed its claim for trade dress infringement (a) by reconsidering the issue of distinctiveness and finding Nora's bottle to be generic, (b) by applying the wrong legal standard for "likelihood of confusion," and (c) by considering issues of arguable fact in applying the *Polaroid* factors; and (2) that the jury verdict in PGA's favor was predicated on erroneous evidentiary rulings.

**2.** Section 43(a) provides in pertinent part that:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person

## DISCUSSION

We review *de novo* grants of summary judgment. *See Nora Beverages I*, 164 F.3d at 742. Summary judgment is appropriate when there are no genuine issues of material fact and when, viewing the evidence in a light most favorable to the non-moving party, no reasonable trier of fact could disagree as to the outcome of the case. *See Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 45 (2d Cir.2000); *Nora Beverages I*, 164 F.3d at 742.

### I. *The Trade Dress Infringement Claim*

Section 43(a) of the Lanham Act protects trade dress.[2] A product's trade dress encompasses the overall design and appearance that make the product identifiable to consumers. *See Nora Beverages I*, 164 F.3d at 743 (quoting *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir.1997)). A product's trade dress is protected under the Lanham Act if it is not functional and if it is either inherently distinctive or has acquired secondary meaning in the marketplace. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

Owning a protectable trade dress is not sufficient for a finding of trade dress infringement; in order to prevail on an infringement claim, a plaintiff must also prove that the allegedly infringing product

with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

is likely to confuse consumers as to its source or sponsorship. *See id.; Nabisco,* 220 F.3d at 45; *Nora Beverages I,* 164 F.3d at 743.

In this Circuit, likelihood of confusion is determined by the multi-factor test set out in *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961). The now-familiar list of *Polaroid* factors includes:

the strength of [the prior owner's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap [between the two products], actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

*Id.*

■ The *Polaroid* analysis is not a mechanical measurement. *See Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1042 (2d Cir.1992). When conducting a *Polaroid* analysis, "a court should focus on the ultimate question of whether consumers are likely to be confused." *Paddington Corp. v. Attiki Imps. & Distrib., Inc.,* 996 F.2d 577, 584 (2d Cir.1993). In making this determination, a court looks to the totality of the product. *See Bristol–Myers Squibb,* 973 F.2d at 1042. Although no one factor is necessarily dispositive, any one factor may prove to be so. *See Nabisco,* 220 F.3d at 46 (finding dispositive on review of summary judgment the "similarity of marks" factor in *Polaroid* analysis).

■ It is important to keep in mind that "the Lanham Act must be construed in the light of a strong federal policy in favor of vigorously competitive markets[.]" *Landscape Forms, Inc. v. Columbia Cascade Co. ("Landscape Forms II"),* 113 F.3d 373, 379 (2d Cir.1997). "When evaluating [trade dress] claims, courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin." *Id.* at 375. As the Supreme Court recently noted, "[t]rade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products. In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 121 S.Ct. 1255, 1260, 149 L.Ed.2d 164 (2001).

## A. *Inherent Distinctiveness*

■ In *Nora Beverages I,* we concluded that the district court improperly found on summary judgment that Nora's bottle was generic and not inherently distinctive. *See* 164 F.3d at 745. We based our conclusion in part on the fact that in making its determination, the court relied on stricken testimony that Evian had sold its spring water in the United States in 1.5–liter clear, ribbed PET bottles since 1986. *See id.*

On remand, the district court reconsidered the issue of distinctiveness and found that Nora's bottle was generic as early as 1989 because it was used, with minor variations, throughout the entire market of similar products.[3] The court based its

3. In *Nora Beverages I,* we held that the appropriate date for assessing distinctiveness was March 1989, the time when PGA entered the market. *See* 164 F.3d at 744. Nora argues that the district court improperly assessed post–1989 evidence in determining that the ribbed PET bottle was not distinctive. We disagree. The district court made two independent findings regarding distinctiveness: first, that Nora's bottle was generic at least by 1989, and, second, that the bottle was admittedly generic by 1994.

finding on newly-admissible testimony regarding Evian's sales and on evidence that prior to 1989, North Country, another competitor in the bottled spring water market, was selling its spring water in bottles that Nora had manufactured and sold to North Country.

Nora argues that the district court defied our directive in *Nora Beverages I* by reconsidering the issue of distinctiveness. To the extent that Nora interprets this Court's earlier discussion as an affirmative finding that Nora's bottle was distinctive, Nora misreads the opinion. We held in *Nora Beverages I* not that Nora's bottle was in fact distinctive, but that on the facts properly before it at that time, the district court could not support a finding on summary judgment regarding distinctiveness. *See* 164 F.3d at 745.

Nora further argues that by relying upon evidence of the North Country sales, the district court disobeyed a footnote in *Nora Beverages I* in which we stated that evidence of sales to North Country "would support a finding that Nora's trade dress was generic but, in light of the other evidence in the record, would not be conclusive." 164 F.3d at 745 n. 8. Had the court on remand relied solely upon the North Country evidence, Nora's argument might be more persuasive. But it did not. In addition to the North Country evidence, the district court also considered the evidence of Evian's sales of 1.5–liter ribbed PET bottles prior to 1989, which, for the first time, was properly before the court.

However, even were we to assume that Nora's bottle was distinctive in 1989 and therefore protected, it would not matter in light of our conclusion that a reasonable trier of fact could not find for Nora on the likelihood of confusion prong of its trade dress infringement claim.

## B. *Likelihood of Confusion*

In *Nora Beverages I*, we remanded in order to allow the district court to conduct a full analysis of the *Polaroid* factors to determine whether there was a likelihood of confusion as to the source of the PGA brand bottles. *See* 164 F.3d at 745–46. We recognized on Nora's first appeal that the district court might validly grant summary judgment in favor of PGA on remand:

> [T]he defendants contend that, because of the prominence of the labels on the bottles at issue, no rational trier of fact could conclude that there is a likelihood of confusion as to the origin of defendants' products. We believe that the district court should consider this argument in the context of its assessment of the remaining *Polaroid* factors. Nothing in this opinion precludes the district court on remand from granting summary judgment to Perrier should it determine on review of all the material evidence that (1) Nora's trade dress was functional, or (2) there are no issues of fact on likelihood of confusion.

*Id.* at 746 n. 11.

As instructed, the district court on remand analyzed each of the *Polaroid* factors and found that there was no likelihood of confusion between the NAYA bottle and the PGA brand bottles. Accordingly, the court granted summary judgment to PGA. We affirm.[4]

---

4. Although the district court did not conduct an independent functionality analysis of Nora's ribbed bottle, it noted in its discussion of good faith that PGA had copied those features of Nora's bottle that were functional and "might well benefit consumers."

We note, without basing today's ruling upon the fact, that the court might have found for PGA on the grounds of functionality in light of the Supreme Court's recent rulings which curtail trade dress protection by expanding the functionality doctrine. *See Qual-*

Nora argues that the district court misstated this Circuit's standard for granting summary judgment on likelihood of confusion by requiring the plaintiffs to show a "probability of confusion, not a mere possibility." Nora's argument is unavailing. As we noted in *Estee Lauder Inc. v. The Gap, Inc.*, a "[l]ikelihood of confusion means a probability of confusion; 'it is not sufficient if confusion is merely "possible."'" 108 F.3d 1503, 1510 (2d Cir.1997) (quoting 3 J. McCarthy, *McCarthy on Trademarks and Unfair · Competition* § 23:2, at 23–10 to –11 (1996)); *see also Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 743 (2d Cir.1998) ("To support a finding of infringement, a probability of confusion, not a mere possibility, must exist. A probability of confusion may be found when a large number of purchasers likely will be confused as to the source of the goods in question." (citations omitted)).

The standard of "likelihood of confusion" does not change on summary judgment, as Nora argues. The fact that on summary judgment the evidence must be construed in a light favorable to the non-moving party does not modify the standard itself, which requires a showing of a probability, or likelihood, of confusion.

Nora also contends that the district court resolved issues of arguable fact regarding some of the *Polaroid* factors in favor of PGA, thereby improperly granting summary judgment to PGA. We address individually Nora's principal arguments.

### 1. *Similarity Between the Marks*

 Nora argues that the district court put undue emphasis upon the NAYA label in making its determination that consumers would not be confused as to the source of the respective products. Nora contends

*itex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (defining "functional" as being "essential to the use or purpose of the article or if it affects the cost or quality of the article") (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850, n. 10, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)); *see also TrafFix Devices*, 121 S.Ct. at 1259–60.

The doctrine of functionality prevents trademark law from inhibiting legitimate competition by giving monopoly control to a producer over a useful product. *See Qualitex*, 514 U.S. at 164, 115 S.Ct. 1300. A plaintiff is barred from gaining trade dress protection for a product if the trade dress is functional. *See Landscape Forms, Inc. v. Columbia Cascade Co.* (*"Landscape Forms I"*), 70 F.3d 251, 254 (2d Cir.1995) (remanding in order to allow the district court to conduct a functionality analysis whether the design of commercial furniture "confers a significant competitive benefit that cannot practically be duplicated by the use of alternative furniture designs"). A product's trade dress is functional where a competitor will be put at a "significant disadvantage" because the feature sought to be protected is "essential to the use or purpose" of the thing or "affects [its] cost or quality[.]" *Id.* at 253. Moreover, a product's functionali-

ty may encompass aesthetic features which confer benefits that cannot practically be duplicated by the use of alternative designs. *See id.* (quoting *Qualitex*, 514 U.S. at 170, 115 S.Ct. 1300).

Nora admits that its design is useful, but argues, incorrectly, that this does not render it "functional." Indeed, there is limited evidence on the record that PGA selected the ribbed PET bottles for functional purposes. The functionality of a square 1.5–liter bottle is arguably much less than that of a ribbed cylindrical one, which fits the hand more snugly and helps prevent slippage from condensation and perspiration. The "bottle-upon-bottle" effect that forms the bottle's "waist" creates a very useful groove into which a thumb and forefinger can rest comfortably while at the same time providing a more secure grip of a relatively heavy bottle.

Finally, Nora's argument that it spent great resources researching its bottle design is unavailing as to a functionality argument. As the Supreme Court recently stated, "The Lanham Act ... does not protect trade dress in a functional design simply because an investment has been made to encourage the public to associate a particular functional feature with a single manufacturer or seller." *TrafFix Devices*, 121 S.Ct. at 1262–63.

that the "virtually identical bottle shapes" preclude summary judgment in favor of PGA. We disagree.

■ As we noted in *Nora Beverages I*, "[Perrier's] labels must be considered in the likelihood of confusion analysis." 164 F.3d at 744. Labels can be integral, if not dispositive, factors in determining overall similarity of trade dress. *See Nabisco*, 220 F.3d at 46 (stating that the " 'similarity of marks' factor can be dispositive and will warrant summary judgment for an infringement defendant 'if the court is satisfied that the . . . marks are so dissimilar that no question of fact is presented.' " (quoting *Res. Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.*, 926 F.2d 134, 141 (2d Cir.1991))); *Merriam–Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 71–72 (2d Cir.1994) (holding that defendant's logo precluded a finding of similarity likely to confuse); *Bristol–Myers Squibb*, 973 F.2d at 1045–46 (finding that despite similar trade dress elements, "the prominence of the trade names on the two packages weighs heavily against a finding of consumer confusion").

While it is true, as Nora points out, that "labels alone cannot insulate an infringer," *Samara Bros., Inc. v. Wal–Mart Stores, Inc.*, 165 F.3d 120, 128 (2d Cir.1998), *rev'd on other grounds*, 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000), we have repeatedly held that the appropriate test for similarity of trade dress is the overall impression of the products and the entirety of the trade dress, and that a mark may not be dissected in order to prove similarity. *See Nabisco*, 220 F.3d at 46–47; *Merriam–Webster*, 35 F.3d at 71–72; *Bristol–Myers Squibb*, 973 F.2d at 1046.

Nora cites to *Lucien Lelong, Inc. v. George W. Button Corp.* ("*Lucien Lelong I* "), 50 F.Supp. 708 (S.D.N.Y.1943), to support its argument that dissimilar labels cannot overcome the infringing similarity in bottle shape. While this may be the case in certain circumstances, the facts here are quite different from those in *Lucien Lelong I*. There, the plaintiff's well-advertised bottle shape was the "predominating, if not the single, mark of origin" that had become "fixed in the minds of the patrons of the cosmetic market as the distinctive sign of plaintiff's manufacture[.]" *Id.* at 710. At the same time, the defendant's infringing label was so small as to be visible "only when it is held near . . . the eye." *Id.* at 709.

The facts in *Lucien Lelong I* were so distinctive that in a subsequent case brought by the same plaintiff against a different defendant, we distinguished *Lucien Lelong I*, stating that "a defendant might use the design of the bottle if there were distinctive signs indicating that it was defendant's product." *Lucien Lelong, Inc. v. Lander Co.*, 164 F.2d 395, 397 (2d Cir. 1947).

Here, NAYA admits that its bottle shape is neither its predominating nor its single mark of origin. The record also indicates that the NAYA label was heavily advertised in its promotional materials and advertisement campaigns. Moreover, PGA brand labels are prominently displayed in a bold and colorful manner and do not require close scrutiny to be visible to the human eye.

Nora also cites to the trademark analysis in *Source Perrier, S.A. v. Waters of Saratoga Springs, Inc.*, 217 U.S.P.Q. 617, 1982 WL 51044 (S.D.N.Y.1982), to argue that PGA brand labels were insufficient to overcome similarity of marks. In *Source Perrier*, the court held that the bottle in question functioned as a trademark and that "[t]he addition of a second trademark (here, the [defendant's] label) to the infringing trademark (the bottle shape) does not dissipate the confusion engendered

through the use of the infringing trademark." *Id.* at 620. The bottle in *Source Perrier* had been competing successfully in the relevant market for over fifty years prior to the arrival of the infringing bottle, and had attained secondary meaning indicating the plaintiff as the source of the product. *Id.* at 619. Here, Nora's bottle was a relative newcomer to the market and held only a small fraction of the share therein. Likewise, Nora has not presented evidence that its bottle—separate from its label—has acquired secondary meaning.

Based on the record before us, we find that the presence of the prominent and distinctive labels alone negates any possibility of a likelihood of confusion and provides sufficient basis for affirming the district court's grant of summary judgment. Consideration of further *Polaroid* factors only strengthens this conclusion.

### 2. *Strength of Mark*

Nora argues that the district court ignored our ruling in *Nora Beverages I* that its mark is distinctive and that the court erred in weighing the strength of its mark. As mentioned above, we reject Nora's interpretation of our previous opinion as finding that Nora's bottle was distinctive. We also find that the court was correct to find for PGA on the strength of mark factor.

■ The strength of a particular mark is measured by the degree to which it indicates source or origin of the product. *See Estee Lauder,* 108 F.3d at 1510; *Bristol–Myers Squibb,* 973 F.2d at 1044. The strength of mark analysis should be conducted from the vantage point of the product's commercial setting. *See Fun–Damental Too,* 111 F.3d at 1003. As such, the strength of a particular mark encompasses the totality of the product in the relevant commercial context.

■ Even an inherently distinctive mark can, in its commercial context, lack strength as a mark. *See W.W.W. Pharm. Co. v. Gillette Co.,* 984 F.2d 567, 572 (2d Cir.1993). Sales of a mark to third parties, as in this case, can warrant a finding of weak trade dress. *See Nora Beverages I,* 164 F.3d at 745 n. 8; *Tough Traveler, Ltd. v. Outbound Prods.,* 989 F.Supp. 203, 212 (N.D.N.Y.1997) (finding weak strength of mark where plaintiff sold its mark and did not retain "exclusivity" of sales); *Versa Prods. Co. v. Bifold Co. (Mfg.) Ltd.,* 50 F.3d 189, 216 (3d Cir.1995) (stating that "use of private labeling undermines a claim that a product's appearance denotes its source, because consumers will be less likely to associate the multifariously labeled product with a *single* source").

In light of its sales to third parties, as well as its low level of commercial success and small advertising budget relative to market competitors at the relevant time, we agree with the district court that Nora possessed a weak mark.

### 3. *Actual Confusion*

■ Nora argues that the district court erred by not considering the testimony of Nora employees regarding two anonymous consumers who had allegedly inadvertently grabbed Poland Spring bottles when they had intended to select NAYA bottles. The district court excluded these two anecdotal instances of consumer confusion on the combined reasoning that they constituted inadmissible hearsay and that they were *de minimis* in nature. We believe that the district court was correct to not consider the testimony on summary judgment.

■ It is appropriate for a district court ruling on summary judgment to consider only admissible evidence. *See Nora Beverages I,* 164 F.3d at 746. Although anecdotal evidence is admissible to estab-

lish actual consumer confusion, *see Lane Capital Mgmt., Inc. v. Lane Capital Mgmt. Inc.,* 15 F.Supp.2d 389, 399 (S.D.N.Y.1998), *aff'd on other grounds,* 192 F.3d 337 (2d Cir.1999); *Rosenthal A.G. v. Ritelite, Ltd.,* 986 F.Supp. 133, 143–44 (E.D.N.Y.1997), it is within a district court's broad discretion to rule upon the admissibility of those anecdotes. *See Raskin v. Wyatt Co.,* 125 F.3d 55, 65–66 (2d Cir.1997). Generally, these principles do not change on a motion for summary judgment. *See id.* at 66.

Even if we were to find that the court abused its discretion in holding the testimony inadmissible under the hearsay rule, we do not believe that the district court erred in finding that two anecdotes of confusion over the entire course of competition constituted *de minimis* evidence insufficient to raise triable issues. *See C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.,* 753 F.2d 14, 18 (2d Cir.1985) (two alleged instances of actual confusion insufficient to establish confusion especially "when contrasted to the hundreds of thousands of [defendant's] magazines sold over the years"); *Door Sys. Inc. v. Pro-Line Door Sys., Inc.,* 83 F.3d 169, 173 (7th Cir.1996) (stating that "plaintiff's evidence that two consumers (out of how many thousands?) may have been misled cannot by itself be thought to create a contestable issue of likelihood of confusion"); *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.,* 22 F.3d 1527, 1535 (10th Cir.1994) ("De minimis evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding the likelihood of confusion[.]").

■ Nora also argues that the district court erred by not weighing evidence of distributor inquiries to Nora sales managers regarding whether Nora was affiliated with other spring water sellers. Nora argues that these inquiries proved likelihood of confusion sufficient to go to trial. We disagree. Inquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion. Indeed, such inquiries are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself. *See, e.g., Gruner + Jahr USA Pub. v. Meredith Corp.,* 793 F.Supp. 1222, 1232 (S.D.N.Y.1992), *aff'd* 991 F.2d 1072 (2d Cir.1993); *Penta Hotels Ltd. v. Penta Tours,* 9 U.S.P.Q.2d 1081, 1102 (D.Conn.1988).

Finally, we note that Nora proffered no evidence of direct consumer testimonials or surveys, while PGA presented affirmative evidence of no consumer confusion. *See Merriam–Webster,* 35 F.3d at 72 ("The lack of survey evidence counts against finding actual confusion.").

### 4. Good Faith

■ Nora argues that the district court's conclusion that PGA committed no bad faith in selecting its bottle shape is legally and factually unsupportable.

■ The *Polaroid* good faith factor "looks to whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang v. Ret. Living Pub. Co., Inc.,* 949 F.2d 576, 583 (2d Cir.1991) (quoting *Edison Bros. Stores, Inc. v. Cosmair, Inc.,* 651 F.Supp. 1547, 1560 (S.D.N.Y.1987)). While intentional copying can raise a presumption of consumer confusion, *see Paddington Corp.,* 996 F.2d at 586; *Fun–Damental Too,* 111 F.3d at 1004, "[t]he intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product." *Streetwise Maps,* 159 F.3d at 745.

To prove PGA's bad faith, Nora points to the fact that PGA ultimately selected a ribbed cylindrical PET bottle from the "limitless array" of available design options. Nora contends that insofar as the good faith factor involves a question of PGA's state of mind, it is an issue of fact that should not be resolved on summary judgment.

■■■ "While ... caution must be exercised in granting summary judgment when state of mind is in issue, '[t]he summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.'" *Res. Developers,* 926 F.2d at 141 (quoting *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985)).

We believe that the district court was correct to find in this case that copying alone was insufficient to establish bad faith. The only evidence of bad faith that Nora proffered was PGA's bottle. At the same time, PGA offered evidence that its bottle choice was based upon a desire to compete with Evian, not NAYA. Also, by placing its labels prominently upon its bottles, PGA negated an inference of intent to deceive consumers as to the source of its product.

We have considered Nora's arguments regarding the remaining *Polaroid* factors and find them to be without merit or inapplicable. We therefore agree with the district court's finding that, on balance, no likelihood of confusion existed in this case, and we affirm the grant of summary judgment to PGA.

II. *The Contract Claim*

After a ten-day trial, the jury returned a verdict against Nora on its contract claim against PGA, finding that Nora had not proven by a preponderance of the evidence that it had entered into a contract with PGA to sell 1.5–liter PET bottles to PGA.

Nora argues that the district court denied it a fair trial by excluding, in the cumulative, evidence regarding the parties' intent and witness credibility. Accordingly, Nora asks us to set aside the jury verdict and to order a new trial assigned to a different judge. We decline to do so.

■■■ A trial court is afforded broad discretion over the admission of evidence and is entitled to substantial deference with regard to its determinations of relevance. *See, e.g., Reilly v. Natwest Mkts. Group Inc.,* 181 F.3d 253, 266 (2d Cir.1999); *Perry v. Ethan Allen Inc.,* 115 F.3d 143, 150 (2d Cir.1997). An appellant bears the heavy burden of showing that the evidentiary rulings were manifestly erroneous, and, even then, reversal is warranted only where affirmance would be "inconsistent with substantial justice." *Perry,* 115 F.3d at 150 (quoting Fed.R.Civ.P. 61).

We have reviewed the record and believe that Nora has failed to meet this high standard.

CONCLUSION

We have considered all of Nora's arguments on this appeal and find in them no basis for disturbing the opinion below. Accordingly, we affirm the judgment of the district court.