**CAR–FRESHNER CORPORATION and Julius Samann Ltd,**
**Plaintiffs,**

v.

**BIG LOTS STORES, INC. and Midwestern Home Products, Inc., Defendants.**

**No. 02–CV–1343.**

United States District Court,
N.D. New York.

April 23, 2004.

Mackenzie Hughes LLP (Nancy L. Pontius, Esq., of Counsel), Syracuse, NY, Oblon, Spivak Law Firm (Roberta S. Bren, Esq., Jonathan Hudis, Esq., of Counsel), Alexandria, VA, for Plaintiffs.

Hiscock & Barclay, LLP, (Robert A. Barrer, Esq., John D. Cook, Esq., of Counsel), Syracuse, NY, for Defendants.

## MEMORANDUM–DECISION and ORDER

MCAVOY, Senior District Judge.

## I. INTRODUCTION

Plaintiffs Car–Freshner Corporation ("CFC") and Julius Samann LTD ("JSL") commenced the instant action against Defendants Big Lots Stores, Inc. ("BLS") and Midwestern Home Products, Inc. ("MHP") alleging trademark infringement, false designation of origin, common law trademark infringement, unfair competition, and trademark counterfeiting arising out of Defendants' sale of a tree-shaped air freshener. Currently before the Court are: (1) Plaintiffs' motion for partial summary judgment pursuant to FED. R. CIV. P. 56 seeking a determination of trademark priority, trademark validity and the likelihood of confusion;[1] and (2) Defendants' cross-motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of Plaintiffs' common law claims for punitive damages and a determination that this is not an "exceptional case" under section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

## II. FACTS

Plaintiff JSL is the owner of the Royal Pine and Tree Design trademarks for air fresheners (Registration Nos. 719,948; 1,781,016; 1,791,233; and 1,990,038). Through various licensing arrangements with JSL, Plaintiff CFC manufactures and markets air fresheners with the Tree Design and Royal Pine trademarks. The air fresheners are packaged in a see-through cellophane pouch. The purported purposes of the see-through pouch are to permit the consumer to see the product and to prevent the scent from dissipating while the product is in the store. Each of Plaintiffs' products contains a federal trademark registration symbol (®) thereon. The "Car–Freshner" mark appears on some, but not all, of Plaintiffs' tree-shaped air freshener products. In some instances, the particular fragrance name, such as Royal Pine, is depicted on a white rectangular background on the base of the product. On other of Plaintiffs' products, there are no rectangular panels with a fragrance name and/or with the Car–Freshner mark, although there is still a rectangular base at the bottom of the tree-shaped air freshener.

Defendant BLS is a mass merchandiser that sells various categories of goods. BLS is the corporate parent of Defendant MHP. MHP is identified as the distributor on the packaging for many of Defendants' imported products, including the air freshener products that are the subject of this lawsuit. At all times pertinent hereto, Lyle Davis was the Vice President of imports for BLS. His responsibilities include locating sources for merchandise for BLS.

In October 2001, Davis attended a merchandise fair in China. Davis was accompanied by a Hong Kong trader, Kingsley International Development Limited ("Kingsley"), with which BLS does business. As a general practice, when Davis identifies products that be believes to be possibilities for sale through BLS, a Kingsley representative photographs the

---

**1.** Plaintiffs do not seek summary judgment on the issues of damages or trademark counterfeiting.

product and then prepares a Merchandise Information Sheet ("MIS") for BLS identifying the product and containing pricing information. Davis receives hundreds of MISs, but BLS often only purchases a fraction of the products for which they obtain quotes.

According to Davis, while at the fair, he stopped at a booth containing numerous paper air fresheners. Davis pointed out several possibilities to the Kinglsey representative. Davis contends that he spent a short amount of time at the booth and did not handle or closely examine any of the air fresheners. Davis does not recall choosing a tree-shaped product, although he does not deny that the air freshener products that he saw may have included Plaintiffs' products.

After Davis returned to the United States, Kingsley sent him an MIS for a tree-shaped air freshener. The MIS describes the item as "3 PCS SET AIR FRESHENER—ROYAL PINE." The MIS included a copy of a photograph of a tree-shaped air freshener. According to BLS, no product name, trade name, manufacturer's name or symbols were discernible from the picture on the MIS. Davis contends that BLS was not provided with an exemplar of the product depicted in the picture and never received a clearer photograph of the product. On the other hand, Defendants state that it "appears" that they had an actual photograph of one of Plaintiffs' products in its possession at the time it ordered paper air fresheners through Kingsley.[2] April 1, 2004 Bren Aff. at Ex. F. Defendants also admit that "a photograph of what appears to be [Plaintiffs'] product appears on the [MIS] ... but denies that the product is clearly visible or that such photograph disclosed a trademarked product." Defs. Responsive SMF at ¶ 37.

After reviewing the MIS and considering issues of pricing, shipping, and availability, Davis decided to purchase the product for sale by BLS. Davis forwarded the MIS to BLS's package design department for the preparation of packaging using the name "Fresh Flair." Before ordering or otherwise selling the product, BLS did not perform a trademark, patent or copyright clearance search. Kingsley arranged for the manufacture of certain air fresheners for BLS. BLS ordered three air freshener products: (1) a yellow vanilla scented air freshener, (2) a red strawberry scented air freshener, and (3) a green, tree-shaped, pine-scented air freshener.[3] Ultimately, BLS offered for sale its "Fresh Flair 3 Pk Air Fresheners." This product consisted of packaging three separate air fresheners (one vanilla, one strawberry, and one tree) in a single unit. Each air freshener was packaged in a separate cellophane pouch. Each of the cellophane pouches were affixed at the top to a card. The Fresh Fair 3 Pk was packaged such that the tree-shaped air freshener was included on the bottom of the three pack (the vanilla scent was on top, the strawberry in the middle, and the pine on the bottom). BLS sold the three pack of air fresheners from approximately August 2002 through November 2002. In November 2002, in response to communications from Plaintiffs, BLS ordered its employees to pull the items from its store shelves.

## III. STANDARD OF REVIEW

On a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving

---

**2.** Defendants maintain that they never had an actual photograph, but a copy of a photograph.

**3.** For a picture of the vanilla-scented and pine-scented air fresheners at issue here, see Exhibit 1 annexed hereto.

party, *see Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir.1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir.1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). With this standard in mind, the Court will address the pending motions.

## IV. DISCUSSION

### a. Trademark Infringement

■ "To prevail on a claim of trademark infringement, a plaintiff must show, first, that its mark merits protection, and, second, that the defendant's use of a similar mark is likely to cause consumer confusion." *Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004). With respect to the first element, Defendants admit that the JSL owns the registration marks for Trademark Nos. 719,498; 1,781,016; 1,719,233; and 1,990,-038. Defendants also do not challenge the ownership or validity of the Tree Design mark, the validity of the registrations therefor, or the priority of registration and use. Accordingly, the first element is satisfied. *Brennan's*, 360 F.3d at 130. This leaves the issue of the likelihood of confusion.

In the Second Circuit,

[t]o evaluate the likelihood of consumer confusion, [courts] apply the multi-factor test set forth ... in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961). This test requires analysis of several non-exclusive factors, including: (1) the strength of the mark, (2) the degree of similarity between the two marks, (3) the competitive proximity of the products, (4) actual confusion, (5) the likelihood the plaintiff will bridge the gap, (6) the defendant's good faith in adopting its mark, (7) the quality of the defendant's products, and (8) the sophistication of the purchasers.... No single factor is dispositive, nor is a court limited to consideration of only these factors. *Polaroid*, 287 F.2d at 495. Further, "each factor must be evaluated in the context of how it bears on the ultimate question of likelihood of confusion as to the source of the product." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir.1986).

### 1. Strength of the Mark

As the Second Circuit recently stated

The strength of a mark refers to its ability to identify the source of the goods being sold under its aegis. *See*

*Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 123 (2d Cir.2001). There are two components of a mark's strength: its inherent distinctiveness and the distinctiveness it has acquired in the marketplace. *See Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743–44 (2d Cir.1998). The former, inherent distinctiveness, examines a mark's theoretical potential to identify plaintiff's goods or services without regard to whether it has actually done so. The latter, acquired distinctiveness, refers to something entirely different. This measure looks solely to that recognition plaintiff's mark has earned in the marketplace as a designator of plaintiff's goods or services.

*Brennan's*, 360 F.3d at 130–31.

Here, Plaintiffs have incontestable, registered marks and Defendants do not argue otherwise. Plaintiffs have submitted evidence that their marks have been used for a long time and that they have made significant investments in promoting the marks. In opposition to Plaintiffs' motion, Defendants have not submitted any evidence countering the strength of Plaintiffs marks. Accordingly, the Court finds that this factor weighs in favor of finding a likelihood of consumer confusion.

### 2. Degree of Similarity

■ "When evaluating the similarity of marks, courts consider the overall impression created by a mark. Each mark must be compared against the other as a whole; juxtaposing fragments of each mark does not aid in deciding whether the compared marks are confusingly similar. The fact that the two marks appear similar is not dispositive. Rather, the question is whether such similarity is more likely than not to cause consumer confusion." *Brennan's*, 360 F.3d at 133 (internal quotation and citation omitted).

Here Defendants' tree-shaped air fresheners bear a striking resemblance to Plaintiffs' tree-shaped air fresheners. *See* Ex. 1. While a few branches may be different here and there, overall, the silhouette of the products are virtually identical. The general presentation of the parties' tree-shaped air fresheners are also similar in that both contain a rectangular base with a white box thereon in which the name of the scent of the freshener is imprinted. The products are further similar in that they are both sold in clear, cellophane plastic pouches that contain a pine cone and needles on the front (albeit in different designs), they are similar in size, and have similar, although not identical, typefaces. The products are dissimilar in that: (i) Defendants' tree-shaped air freshener indicates that its scent is "PINE," whereas Plaintiffs' scent is "Royal Pine;" (ii) Defendants' tree-shaped air freshener was sold in a packet along with two non-tree-shaped air fresheners, whereas Plaintiffs' tree-shaped freshener is sold individually; (iii) Defendants' tree-shaped air freshener is not immediately visible when displayed in stores because it was the last air freshener in the packet of three air fresheners; (iv) there are different instructions for use on the packaging; and (v) in addition to containing a pine cone and needles on the packaging, Defendants' packaging also has a picture of a vanilla ice cream cone and two strawberries, whereas Plaintiffs' packaging only contains the pine cone and needles. Although somewhat unclear based on the submissions provided to the Court, there also may be some dissimilarities in the shade of green used on the parties' respective air fresheners. Defendants' product appears to be slightly bluer than Plaintiffs'. *See* Samann Decl. at Ex. E; Exhibit 1. Several of the above-identified differences are eliminated, however, upon consideration of post-sale confusion. *See* discussion *infra* at IV(a)(9).

Considering the overall context in which the marks appear, the Court finds that this factor weighs in favor of finding a likelihood of consumer confusion.

### 3. Competitive Proximity

■ "The competitive proximity factor has two elements, market proximity and geographic proximity. Market proximity asks whether the two products are in related areas of commerce and geographic proximity looks to the geographic separation of the products. Both elements seek to determine whether the two products have an overlapping client base that creates a potential for confusion." *Brennan's,* 360 F.3d at 134.

Plaintiffs' products are sold in single units through discount department stores, mass merchandise stores and automotive stores across the country. BLS is a mass merchandiser that sold its air fresheners in its own stores. Without doubt, Plaintiffs' and Defendants' products are in related areas of commerce and there is no appreciable geographic distancing. Accordingly, there is a real likelihood of there being an overlapping client base that creates a potential for confusion. Therefore, this factor weighs in favor of finding a likelihood of consumer confusion.

### 4. Actual Confusion

Plaintiffs have offered no evidence of actual consumer confusion and the Court, therefore, finds that this factor does not aid Plaintiffs in their quest for summary judgment.

### 5. Bridging the Gap

In the instant matter, Defendants actually were selling products similar to those of Plaintiffs and, thus, to the extent any gap ever existed, it has been bridged. This factor weighs in favor of finding a likelihood of consumer confusion.

### 6. Defendants' Good Faith in Adopting the Mark

The next *Polaroid* factor, Defendants' good faith in adopting the mark, looks to whether Defendants intended to capitalize on Plaintiffs' good will in adopting the mark. *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc.,* 228 F.3d 56, 65 (2d Cir.2000). "Any evidence that is probative of intent to trade on the protected mark would be relevant to the good faith inquiry." *Id.* "While intentional copying can raise a presumption of consumer confusion, the intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product." *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 269 F.3d 114, 124 (2d Cir.2001) (internal citations, quotations and alterations omitted).

Here, there is evidence that the products are quite similar in appearance. There also is some similarity of the products' packaging. Evidence concerning the similarity of the products "might permit an inference of bad faith, but does not require one." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,* 317 F.3d 209, 219 (2d Cir.2003). The other evidence of bad faith proffered by Plaintiffs is that their tree-shaped air fresheners are widely known and Defendants should have known about it, the term "Royal Pine" was included on the MIS and other documents in BLS's possession, the MIS contained a photograph of what appears to be Plaintiffs' product, and Defendants failed to conduct any trademark search. Defendants counter that they were not aware of Plaintiffs' products or their intellectual property rights prior to receiving a "cease and desist" letter from Plaintiffs, Davis never handled Plaintiffs' products while in China, the photograph in the MIS is not clear concerning the products' source or its

trademarked status, and, once BLS became aware of Plaintiffs' intellectual property rights, it immediately took corrective action.

The Court finds that the foregoing facts creates a triable issue of fact concerning whether Defendants' adopted the mark in good faith. It is for a trier of fact to determine whether Defendants' actually knew of Plaintiffs' products prior to producing a similar item and whether Defendants should have learned of Plaintiffs' intellectual property rights from the review of the products in China, the MIS and other documents in BLS's possession.

### 7. Quality of Defendants' Product

"The issue of the quality of the secondary user's product goes more to the harm that confusion can cause the plaintiff's mark and reputation than to the likelihood of confusion." *Virgin Enterprises, Ltd. v. Nawab*, 335 F.3d 141, 152 (2d Cir.2003). Plaintiffs' evidence concerning the relative qualities of the products is scant, if not non-existent.

Plaintiffs first argue that Defendants' products are smaller than Plaintiffs. Bigger is not always better and the relative size of the products does not require the conclusion that Defendants' product is an inferior air-freshener. Plaintiffs also argue that the cellophane pouch in which Defendants' products are sold are not sealed well, thereby permitting the dissipation of the scent. Plaintiffs, however, offer no actual evidence of this other than their suppositions. ("[T]he individual pouches containing the air freshener products were not well seamed or sealed, which *may* allow the fragrance to escape so that the product does not last as long when the customer takes the item out of the pouch.") Pls.' SMF at ¶ 55 (emphasis added). "In the absence of undisputed evidence supporting the superiority of [Plaintiffs'] product, this factor cannot be enlisted in the Plaintiff's favor on summary judgment." *Patsy's Brand,* 317 F.3d at 219.

### 8. Sophistication of the Purchasers

■ "Generally, the more sophisticated and careful the average consumer of a product is, the less likely it is that similarities in trade dress or trade marks will result in confusion concerning the source or sponsorship of the product." *Bristol–Myers Squibb Co. v. McNeil–P.P.C. Inc.,* 973 F.2d 1033, 1046 (2d Cir.1992). Conversely, ordinary consumers of inexpensive retail products are likely to be confused by similar labels bearing similar marks. *See Patsy's Brand,* 317 F.3d at 219. Here, in light of the inexpensive, disposable nature of the products,[4] buyer sophistication is low. This increases the likelihood of confusion. Accordingly, this factor weighs in favor of a finding of a likelihood of consumer confusion.

### 9. Conclusion Concerning the Likelihood of Confusion

■ If each of the *Polaroid* factors were given equal weight, the scales would clearly tip in favor of Plaintiffs. However, the *Polaroid* factors are not of equal weight and the different factors are of different value in different cases. We must bear in mind the ultimate question—the likelihood of consumer confusion as to the source of the product. Upon review of the various *Polaroid* factors and, most significantly, the strength of Plaintiffs' mark, the similarity in the overall appearances of the product, the fact that the parties are in direct competition, and the lack of consumer sophistication, the Court finds that a fair-minded trier of fact could only come to the conclusion that there is a likelihood of

---

4. The parties' products retail in the $1.00 range.

consumer confusion. *See Patsy's Brand,* 317 F.3d at 219.

The Court is given some pause by the fact that Defendants' tree-shaped air freshener is located at the bottom of a packet of three air-fresheners and, thus, a consumer may not actually see Defendants' tree-shaped air freshener when he or she decides to purchase it. However, the overall structure of Defendants' vanilla-scented air freshener (a plant-shaped air-freshener with a rectangular based upon which the name of the scent is imprinted) is similar to the general appearance of Plaintiffs' product such that there is a likelihood of confusion, particular in light of the lack of consumer sophistication. *See* Exhibit 1.

■ In any event, while the packaging and layering of the various air fresheners in Defendants' three-pack may somewhat diminish the likelihood of point-of-sale confusion, there remains the issue of post-sale confusion. "Infringement cases have consistently held post-sale confusion as well as point-of-sale confusion to be actionable under the Lanham Act." *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 218 (2d Cir. 1999); *see Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 872–73 (2d Cir.1986). In *Nabisco, Inc.,* the Second Circuit addressed a Lanham Act claim concerning competing goldfish-shaped crackers. In that case, much like the present case, the defendant argued that there was no similarity because the defendants' packaging was very different from the plaintiffs' and the defendants' product was a three-shape mix that was only one-fourth goldfish. The Second Circuit rejected this argument noting that:

> Like the district court, we are not persuaded by Nabisco's argument. As for Nabisco's box, many consumers of its crackers will not see the box; they will find goldfish-shaped cheddar cheese crackers served in a dish at a bar or restaurant or friend's house, looking very much like the familiar Pepperidge Farm Goldfish product.... The fact that only one quarter of the crackers in Nabisco's mix are fish ... is helpful to Nabisco, but in our view insufficiently so. Many consumers seeing the crackers ... will recognize a fish reminiscent of Pepperidge Farm's fish.

*Nabisco,* 191 F.3d at 218.

In the instant case, once a consumer purchases Defendants' product and hangs the tree-shaped air freshener from his or her rear-view mirror, the product is virtually indistinguishable from Plaintiffs', thereby creating a strong likelihood of post-sale consumer confusion concerning the source of the product. *See* Exhibit 1.

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED.

### b. Defendants' Cross–Motion for Summary Judgment

### 1. Whether There are Sufficient Facts to Support a Claim For Punitive Damages

Defendants' move for summary judgment seeking dismissal of Plaintiffs' claim for punitive damages on the ground that it has not engaged in gross, wanton, or willful fraud or other morally culpable conduct to an extreme degree.

■ Under New York law, punitive damages are available for a claim of unfair competition where a "defendant's conduct has constituted gross, wanton, or willful fraud or other morally culpable conduct to an extreme degree." *Getty Petroleum Corp. v. Island Transp. Corp.,* 878 F.2d 650, 657 (2d Cir.1989) (internal quotations and citation omitted). "New York law clearly permits punitive damages where a wrong is aggravated by recklessness or willfulness, ... whether or not directed against the public generally." *Id.*

■ A jury may credit Defendants' version of the facts that they never knew of Plaintiffs' products, had no reason to know of Plaintiffs' intellectual property rights in tree-shaped air fresheners, and innocently infringed on Plaintiffs' intellectual property rights. A jury similarly could conclude that, given the strength of Plaintiffs' marks and the information that was available to Davis (either directly or through Kingsley) based on his visit to China, the information on the MIS and other documents used by BLS, and his failure to conduct any intellectual property search before ordering the air fresheners, he knew or reasonably should have known of Plaintiffs' intellectual property rights. A jury could further conclude that, if David had, or reasonably should have had, such knowledge, his decision to order and sell tree-shaped air fresheners constituted a knowing or reckless disregard for Plaintiffs' rights. The Court, therefore, finds that there are triable issues of fact concerning the issue of punitive damages. Defendants' motion to dismiss the claim for punitive damages on this ground is denied.

### 2. Whether Punitive Damages Are Available in the Absence of Actual Damages

Defendants next contend that the claim for punitive damages must be dismissed because, under New York law, punitive damages are not available in the absence of actual damages and Plaintiffs have failed to demonstrate any actual damages.

■ Under New York law, "nominal damages will be awarded to a plaintiff where the law recognizes a technical invasion of [its] right or a breach of defendant's duty, but where the plaintiff has failed to prove actual damages or a substantial loss or injury to be compensated." *Weiss v. Miller*, 166 A.D.2d 283 284, 564

N.Y.S.2d 110 (1st Dep't 1990) (upholding award of nominal damages in unfair competition claim), *aff'd*, 78 N.Y.2d 979, 574 N.Y.S.2d 932, 580 N.E.2d 404 (1991). Thus, if Plaintiffs are successful on their unfair competition claim, absent any proof of actual damages, they would be entitled to nominal damages. *Id.* Punitive damages may be awarded on the basis of nominal damages, although it should be remembered that any award of punitive damages must not be grossly excessive. *See Reinah Dev. Corp. v. Kaaterskill Hotel Corp.*, 59 N.Y.2d 482, 465 N.Y.S.2d 910, 452 N.E.2d 1238 (1983); *White Eagle Market, Inc. v. Gonzalez*, 36 A.D.2d 864, 321 N.Y.S.2d 1019 (2d Dep't 1971); *see also Local Union No. 38, Sheet Metal Workers' Int'l Assn. AFL–CIO v. Pelella*, 350 F.3d 73, 88 (2d Cir.2003). For this reason, Defendants' motion to dismiss the claim for punitive damages must be denied.

### c. Whether the Instant Case is "Exceptional" Under the Lanham Act

■ The Lanham Act provides for an award of attorneys fees to the prevailing party in "exceptional" cases. 15 U.S.C. § 1117(a). Exceptional circumstances include willful infringement. *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir.1995). For the reasons previously stated, a jury could conclude that BLS acted willfully if it had the requisite knowledge concerning Plaintiffs' intellectual property rights and acted to produce a similar product notwithstanding that knowledge. Accordingly, there are triable issues of fact whether this is an exceptional case.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED and Defendants' cross-motion for summary judgment is DENIED.

IT IS SO ORDERED.

**EXHIBIT 1** — Defendants' product appears on the left; Plaintiffs' on the right.

